76 A.3d 1186

**David SCULL, et al.**

v.

**GROOVER, CHRISTIE & MERRITT, P.C.**

**No. 71, Sept. Term, 2012.**

Court of Appeals of Maryland.

Sept. 30, 2013.

**114**

Steven A. Skalet (Mehri & Skalet, PLLC, Washington, DC), on brief, for Petitioners.

Brian S. Goodman (Alexandra P. Moylan of Pessin Katz Law, P.A., Towson, MD), on brief, for Respondent.

Douglas F. Gansler, Attorney General, Kimberly S. Cammarata, Assistant Attorney General, Baltimore, MD, for brief of Amicus Curiae Consumer Protection Division.

William Paul Blackford, Blackford & Flohr, L.L.C., Severna Park, MD, for Amicus Curiae brief of the Maryland State Medical Society.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and BELL, * JJ.

McDONALD, J.

A health maintenance organization ("HMO") provides a form of health care insurance in which a member of the HMO pays a periodic fee to the HMO and the HMO finances health care services for the member without further charge to the member except for certain fees specified in the HMO plan. To support this form of health care insurance, the Maryland Health Maintenance Organization Act establishes the ground rules for HMOs, HMO members, and health care providers. Among those ground rules is one that prohibits health care providers from "balance billing"—*i.e.*, charging an HMO member a fee for covered services in addition to those allowed by the HMO plan or statute.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

This case concerns what, if any, remedy an HMO member has when a health care provider allegedly violates that prohibition. In particular, does the HMO member have an implied private cause of action against the health care provider under the HMO Act? In addition, while there is an explicit private cause of action under the Consumer Protection Act, are medical billing practices exempt from that Act under exclusions for the "professional services" of medical practitioners?

We hold that an HMO member who has been billed by a provider for a covered service does not have an implied private cause of action under the HMO Act. But the HMO member is not precluded from bringing an action under the Consumer Protection Act.

### Background

*The X–Ray, the HMO, and the Bill*

The following facts are alleged in the complaint that initiated this action.

In 2008, Petitioner David Scull, an attorney who resides in Bethesda, Maryland, was having problems with his knee. At that time, Mr. Scull had health care insurance as a member of the United Healthcare Select HMO ("the HMO"). Among the services covered by the HMO were outpatient laboratory and x-ray services.

Mr. Scull visited his orthopedist, who was a member of the HMO's physician network. The orthopedist referred him to Respondent Groover, Christie & Merritt, P.C. ("GCM"), a radiology practice in Bethesda, for an x-ray of the knee. On May 23, 2008, GCM took x-ray images of Mr. Scull's knee.

Nearly a year later, on May 22, 2009, GCM sent Mr. Scull a bill for $121.00 for the x-ray exam. To arrive at that charge, the bill indicated an initial charge of $242.00, with credits in the amounts of $91.73 and $29.27 for "Adjustments" and "Insurance Payment" respectively.[1] At the bottom of the bill

---

1. The invoice, a copy of which was attached to the complaint, does not further explain the basis for these adjustments. In its motion to

in all capital letters was the following: "Message: We are unable to collect from your insurance because, [sic] your insurance states you have other primary coverage." Elsewhere the bill listed a phone number and website to make payments or to provide insurance information.

Mr. Scull called the phone number on the bill and found himself communicating with GCM's billing agent, which told him that the HMO had reversed the payment it had made to GCM and that he should submit his claim to Medicare. When he contacted the HMO, however, it informed him that he was covered for the x-ray exam and that payment had in fact been made to GCM. He relayed this information by e-mail to GCM's billing agent, which responded on May 26, 2009, that he should "disregard any statement or erroneous information" and that his account had been adjusted to "a $0.00 balance."

Nonetheless, in June 2009, Mr. Scull received another bill from GCM with respect to the x-ray exam for $121.00. This time, Mr. Scull paid the bill by sending GCM a check for $121.00 a few days later.

Three months later, on September 4, 2009, Mr. Scull received in the mail a check from GCM for $121.00 and a note indicating GCM had conducted an audit and found a credit owing to Mr. Scull. Mr. Scull did not cash the refund check. In Mr. Scull's view, GCM had refunded the money only because it knew he is an attorney and was attempting to moot any potential litigation "which would challenge GCM's practice of balance billing."

*The Lawsuit*

On January 19, 2010, Mr. Scull filed this action in the Circuit Court for Montgomery County. The complaint alleged that the bills that GCM sent to Mr. Scull were an illegal attempt to "balance bill" an HMO member in violation of State

---

dismiss, GCM did not indicate what, if any, agreements it had with the HMO as to the actual amount it would charge the HMO for imaging services provided for the HMO's members.

law. The complaint asserted two theories of recovery relevant to this appeal.[2] The first count of the complaint sought judicial recognition of an implied private right of action under the State HMO law for a violation of the provision of that statute that prohibits "balance billing" of HMO members for services covered by the HMO. The second count of the complaint alleged that the bills constituted an "unfair and deceptive practice" in violation of the Consumer Protection Act and was brought under Maryland Code, Commercial Law Article, § 13–408—the provision of the Consumer Protection Act that authorizes civil actions by consumers. The complaint sought certification as a class action under Maryland Rule 2–231 "on behalf of all enrollees of all health maintenance organizations licensed in Maryland who have been balanced-billed by [GCM] and who have paid [GCM] all or part of the billed amount during the last three years. . . ."

GCM filed a motion to dismiss the complaint for failure to state a claim on which relief could be granted. Following a hearing on September 30, 2010, the Circuit Court granted that motion as to all counts and dismissed the complaint without prejudice. Mr. Scull then filed an amended complaint that omitted the count asserting an implied right of action under the HMO law and that elaborated on the claim under the Consumer Protection Act for unfair and deceptive practices.[3] The Circuit Court dismissed the amended complaint with prejudice.

---

**2.** The complaint also included a claim for unjust enrichment. No issues concerning that claim are before this Court. See note 4 below.

**3.** The initial complaint had referenced Maryland Code, Commercial Law Article ("CL"), § 13–301(1) (defining "unfair or deceptive trade practices" to include a false written statement having the capacity to mislead or deceive consumers) and CL § 13–303(1) (prohibiting unfair or deceptive practices in the sale of consumer services). The amended complaint added references to CL § 13–301(3) (defining "unfair or deceptive trade practices" to include a failure to state a material fact if the failure deceives or tends to deceive) and CL § 13–303(4), *subsequently recodified as* CL § 13–303(5) (prohibiting unfair or deceptive trade practices in the collection of consumer debts).

*The Appeal*

Mr. Scull appealed and the Court of Special Appeals affirmed in a reported opinion. 205 Md.App. 567, 45 A.3d 925 (2012). First, with respect to an implied private cause of action for violation of the prohibition against balance billing in the State HMO law, the intermediate appellate court held that there is no such cause of action and that, in any event, GCM's invoice fit within an exception related to Medicare patients. Second, with respect to the claim under the Consumer Protection Act, the court held that medical billing practices are not subject to the Consumer Protection Act because they qualify as "professional services" of a medical or dental practitioner and are therefore excluded from the purview of that Act.[4]

We granted Mr. Scull's petition for a writ of certiorari to review both of those holdings.[5] We agree that there is not an implied private right of action under the HMO law. We hold, however, that medical billing is not a "professional service" exempt from the Consumer Protection Act. Accordingly, on remand Mr. Scull may pursue his claim under the Consumer Protection Act.[6]

---

4. The Court of Special Appeals also upheld the Circuit Court's dismissal of Mr. Scull's claim for unjust enrichment on the basis that any "enrichment" of GCM was by virtue of Mr. Scull's decision not to cash the refund check. *See* note 2 above. Mr. Scull has not sought further review of that ruling in this Court.

5. In a footnote to its brief in this Court, GCM for the first time asserts an additional ground for affirming the Circuit Court's ruling: that Mr. Scull's failure to include a claim under the HMO Act in his amended complaint after his initial complaint was dismissed constituted an abandonment of that claim. We ordinarily do not decide issues that are not preserved for review in a petition or conditional cross-petition for certiorari. Maryland Rule 8–131(b). We will not depart from that policy in this case.

6. The Circuit Court did not address the question of class certification before it dismissed the complaints. We express no opinion on whether this claim may properly be pursued as a class action.

## Discussion

### *Standard of Review*

██ In reviewing the dismissal of a complaint for failure to state a claim, an appellate court considers "whether the well-pleaded allegations of fact contained in the complaint, taken as true, reveal any set of facts that would support the claim made." *Shenker v. Laureate Educ., Inc.,* 411 Md. 317, 334–35, 983 A.2d 408 (2009) (citation omitted). The two issues before us are questions of law on which we owe no deference to the Circuit Court or the Court of Special Appeals. *See Reichs Ford Road Joint Venture v. State Roads Commission,* 388 Md. 500, 509, 880 A.2d 307 (2005).

### *Whether There is an Implied Private Cause of Action under the HMO Act*

#### *The HMO Act and the Prohibition Against Balance Billing*

██ The Maryland Health Maintenance Organization Act is set forth in Maryland Code, Health–General Article ("HG"), § 19–701 *et seq.* That law provides the statutory basis for the type of health care coverage provided by HMOs. Under the basic concept of an HMO, a member pays a periodic fee to the HMO in return for the HMO's promise to provide or finance health care services for the member without further charge, except for co-payments, co-insurance, deductibles, and similar charges set forth in the HMO plan. *See Riemer v. Columbia Medical Plan, Inc.,* 358 Md. 222, 228–31, 747 A.2d 677 (2000). Accordingly, the statute prohibits a health care provider [7] from billing HMO members for amounts beyond those provided in the particular HMO's plan—a practice sometimes referred to as "balance billing." The statute states, in pertinent part:

---

7. There is an open question as to the extent to which this prohibition may apply to out-of-state providers. *See* 83 *Opinions of the Attorney General* 128, 135–40 (1998). As GCM operates within Maryland, we need not address that question for purposes of this case.

(p)(1) Except as provided in paragraph (3) of this subsection, *individual enrollees and subscribers* of health maintenance organizations issued certificates of authority to operate in this State *shall not be liable to any health care provider for any covered services* provided to the enrollee or subscriber.

(2)(i) *A health care provider or any representative* of a health care provider *may not collect or attempt to collect from any subscriber or enrollee any money owed to the health care provider by a health maintenance organization* issued a certificate of authority to operate in this State.

(ii) A health care provider or any representative of a health care provider may not maintain any action against any subscriber or enrollee to collect or attempt to collect any money owed to the health care provider by a health maintenance organization issued a certificate of authority to operate in this State.

(3) Notwithstanding any other provision of this subsection, a health care provider or representative of a health care provider may collect or attempt to collect from a subscriber or enrollee:

(i) Any copayment or coinsurance sums owed by the subscriber or enrollee to a health maintenance organization issued a certificate of authority to operate in this State for covered services provided by the health care provider;

(ii) If Medicare is the primary insurer and a health maintenance organization is the secondary insurer, any amount up to the Medicare approved or limiting amount, as specified under the Social Security Act, that is not owed to the health care provider by Medicare or the health maintenance organization after coordination of benefits has been completed, for Medicare covered services provided to the subscriber or enrollee by the health care provider; or

(iii) Any payment or charges for services that are not covered services.

HG § 19–710(p) (emphasis added). To similar effect, the statute requires that contracts between HMOs and health care providers include a "hold harmless clause" that bars the provider from balance billing HMO members for covered services. HG § 19–710(i). Together, "[t]hese sections explicitly provide that subscribers or members owe no debt to any health care provider (*i.e.,* any doctor, hospital, etc.) for any covered services." *Riemer,* 358 Md. at 244, 747 A.2d 677. As to the specific relationship between the HMO member and the health care provider, the HMO member "is not a debtor at all, but has already paid for services rendered." *Id.* at 245, 747 A.2d 677.[8]

In his initial complaint asserting an implied right of action under the HMO law, Mr. Scull alleged that he was an HMO member, that he was referred to GCM by a physician under contract with his HMO, that GCM is a health care provider in Maryland, that GCM provided him with services covered under his HMO plan, and that GCM billed him a fee not permitted by his HMO plan. If we accept the allegations of the complaint as true for purposes of the motion to dismiss, as we must, Mr. Scull has adequately alleged a violation of the prohibition against balance billing in the HMO Act. That statute does not explicitly provide a cause of action for an HMO member allegedly harmed by such a violation. The question that remains is whether there is an implied private right of action.

*Implied Private Causes of Action*

■ To assess whether a State statute contains an implied private right of action, this Court has adopted the same test applied by the Supreme Court to make that assessment with respect to federal statutes. *Baker v. Montgomery County,*

---

**8.** The prohibition against balance billing of HMO members also applies to health care providers who are not under contract with the HMO. A provider who is not under contract with the HMO who serves HMO members with the plan's authorization would be entitled to payment from the HMO at higher rates specified in the statute. *See* HG § 19–710.1. The statute provides a private right of action on behalf of the provider to obtain payment from the HMO. HG § 19–710.1(g).

427 Md. 691, 708–9, 50 A.3d 1112 (2012) (*quoting Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). That determination depends on the answers to three questions:

(1) Is the plaintiff "one of the class for whose especial benefit the statute was enacted"?

(2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

(3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Id.*

### Application to HMO Statute

The first question is whether Mr. Scull is a member of the class for whose benefit the statute was enacted. HG § 19–710(p) limits the liability of "individual enrollees and subscribers" of HMOs to health care providers for services covered by the HMO plan. On its face, this strongly suggests an intent to protect a specific class of persons, namely enrollees and subscribers of HMOs, from the practice of balance billing. As a member of an HMO, Mr. Scull is a member of this class.

The second question is whether there is any indication of legislative intent to create or to deny a remedy. There is, of course, nothing explicit in the HMO statute about a private cause of action for violation of the balance billing prohibition. This is unsurprising, given that the issue before us is whether there is an implied cause of action. More to the point, nothing in the text of the balance billing prohibition in HG § 19–710(p) suggests that the Legislature believed that it was creating a new cause of action on behalf of HMO subscribers against health care providers—as opposed to creating a structure to foster HMO plans. Moreover, as the Court of Special Appeals noted, the legislative history of the prohibition against balance billing is devoid of any mention of an intent to create a private cause of action on behalf of patients against health care

providers.[9]  While legislative silence is not conclusive, this certainly weighs against finding a private right of action. *Baker*, 427 Md. at 714, 50 A.3d 1112.[10]

The final factor is whether an implied cause of action would be consistent with the larger statutory scheme.  In this instance, the statutory scheme largely concerns the structure and operation of health maintenance organizations, not the billing practices of health care providers.  In that sense, the statute is intended to confer a general benefit on the public at large by providing a foundation for a particular form of health care coverage.  *Baker*, 427 Md. at 710–12, 50 A.3d 1112.  The Act is primarily focused on the operation and regulation of an HMO and its relationship with the providers that serve its

---

**9.**  The legislative history of the HMO Act, and specifically the prohibition against balance billing of HMO members, is described in some detail in a series of Attorney General opinions.  *See* 83 *Opinions of the Attorney General* 128, 129–35 (1998);  85 *Opinions of the Attorney General* 330, 331–33 (2000);  89 *Opinions of the Attorney General* 53, 55–59 (2004);  90 *Opinions of the Attorney General* 29, 30–33 (2005).  None of those opinions addresses whether the Act includes an implied private right of action on behalf of an HMO member against a health care provider.

**10.**  The Court of Special Appeals concluded that there was no legislative intent to create a private remedy in part because it believed that there is already a mechanism in place to correct violations of the balance billing provisions by health care providers.  The court pointed to a provision of the Health–General Article granting authority to the Insurance Commissioner to take action "[i]f any person violates any provision of [HG] § 19–729."  That statute, however, relates only to violations by HMOs.  *See* HG § 19–729(a) ("A health maintenance organization may not . . .").  Whether an HMO has paid a provider what it owes under the plan or under statute (if the provider has not contracted with the HMO) is a quite separate question from what, if anything, the HMO member owes the provider.  Accordingly, that provision says nothing about remedies against providers.  For the same reasons, a federal court decision holding that a health care provider did not have an implied right of action under the Act is of limited significance to the issue before us.  *See IVTX, Inc. v. United Healthcare*, 112 F.Supp.2d 445 (D.Md.2000) (no implied right of action for health care provider against HMO in light of express remedy available to providers under the Act).  Neither party directs us to any other provision giving the Insurance Commissioner authority to bring an action against a health care provider for balance billing.

members. Notably, the explicit private cause of action that does appear in the Act is on behalf of a health care provider against an HMO that fails to carry out the HMO's obligations under the Act. *See* HG § 19–710.1(g). While the prohibition against balance billing of HMO members is an important part of the overall scheme, the Act provides for its enforcement through "hold harmless" contract provisions required by HG § 19–710(i). And there is already in place a cause of action for a patient to obtain relief for violations of unlawful billing practices, as we shall see in the next section of this opinion.

We thus agree with the Court of Special Appeals that an HMO member does not have an implied private right of action under the HMO law with respect to a violation of the balance billing prohibition.[11]

### *Whether Medical Billing Is Exempt from the Consumer Protection Act*

#### *The Consumer Protection Act*

■ The Consumer Protection Act is set forth at Maryland Code, Commercial Law Article ("CL"), § 13–101 *et seq.* Among other things, the Consumer Protection Act prohibits "unfair or deceptive trade practices" in a variety of circum-

---

**11.** As noted above, the Court of Special Appeals alternatively held that the GCM invoice fit within an exception to the balance billing prohibition relating to Medicare patients. Although GCM cited the Medicare exception in the lower courts to illustrate that the HMO law allows balance billing in some circumstances, GCM did not assert in those courts that the Medicare exception necessarily applies in this case. Nor did the Circuit Court rely on that provision in dismissing the count of the complaint based on the HMO Act.

In any event, there is insufficient information in the record to dismiss this count on the basis of the Medicare-related exception. The complaint did not allege that Mr. Scull was a Medicare patient. The only reference to Medicare concerns an alleged statement by GCM's billing agent to Mr. Scull that the billing agent believed that the HMO had reversed the payment for his x-ray exam and that he should submit a claim to Medicare. Neither party provided any further elaboration of the relation, if any, of Medicare to the services provided to Mr. Scull. There is thus an insufficient factual basis to rule, as a matter of law, that the exception to the balance billing prohibition for certain Medicare-related claims would apply here.

stances, including the "sale . . . of consumer services" and the "collection of consumer debts." CL § 13–303(1), (5). The statute lists various ways of committing unfair or deceptive trade practices. For example, a violation may involve an affirmative "false . . . or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." CL § 13–301(1). A violation may also consist of an omission— *i.e.*, a "failure to state a material fact if the failure deceives or tends to deceive." CL § 13–301(3). It is not necessary that a consumer actually have been misled or damaged as a result of the practice. CL § 13–302. The Act is to be construed liberally to promote the protection of consumers. CL §§ 13–105, 13–102(3).

While the Consumer Protection Division of the Attorney General's Office is generally charged with interpretation and enforcement of the Consumer Protection Act, CL § 13–204, the Act has included an explicit private cause of action since 1973. Chapter 73, Laws of Maryland 1973, *codified at* CL § 13–408. In particular, "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the Consumer Protection Act]." CL § 13–408(a). Accordingly, the issue that has been presented to us with respect to the Consumer Protection Act is not whether there is a private cause of action under the Act— clearly there is—but whether an exclusion in the Act forecloses such an action against a health care provider like GCM.

*Exclusion of "Professional Services" from the Consumer Protection Act*

The Act exempts certain activities of specified entities and individuals from its purview. For example, the Act does not apply to "the professional services" of individuals in specified professions. CL § 13–104(1).[12] Pertinent to this case, that

---

12. The statute reads in pertinent part:
    This title does not apply to:
       (1) The professional services of a certified public accountant, architect, clergyman, professional engineer, lawyer, veterinarian, insur-

list includes "the professional services" of a "medical or dental practitioner." *Id.*

A related exclusion appears in the section of the statute that provides a private right of action. That provision states that "a person may not bring an action under this section to recover for injuries sustained *as a result of the professional services* provided by a health care provider ..." CL § 13–408(d) (emphasis added).[13]

*Professional Services and Billing Practices*

The principal issue we must resolve in applying these statutes is whether billing practices of a health care provider like GCM fall within the category of "professional services" of a "medical practitioner" or "health care provider." [14] What is in controversy is whether GCM's billing practices constitute "professional services" under these statutes.

There is no definition of "professional services" contained in the Consumer Protection Act. Nor is there any legislative

ance company authorized to do business in the State, insurance producer licensed by the State, Christian Science practitioner, land surveyor, property line surveyor, chiropractor, optometrist, physical therapist, podiatrist, real estate broker, associate real estate broker, or real estate salesperson, or medical or dental practitioner. CL § 13–104(1). Also exempt from the Act are services and operations of a public service company that is regulated by the Public Service Commission and radio and television broadcasters and publishers that, without knowledge of the violation, publish advertisements for others that violate the Act. CL § 13–104(2)–(3). The professional services exemption was enacted in 1974 as part of Maryland Code, Article 83, § 20J. Chapter 609, Laws of Maryland 1974. Although it has been amended in minor respects over the years, as well as recodified as part of the Commercial Law Article with the rest of the Consumer Protection Act, none of those changes relate to the issue before us.

**13.** This provision was added to CL § 13–408 in 2003. Chapter 371, Laws of Maryland 2003.

**14.** The Circuit Court read the exclusion broadly, stating at the first motions hearing that the Consumer Protection Act "does not pertain to medical providers." The Court of Special Appeals recognized that the exclusion is actually limited to "professional services" rendered by medical providers, but was willing to read that phrase liberally to include "services outside of direct professional conduct." 205 Md.App. at 584, 45 A.3d 925.

history available pertaining to the 1974 enactment of what is now CL § 13–104(1). However, there is legislative history pertaining to the 2003 enactment of the related exemption in CL § 13–408 concerning the "professional services" of health care providers. Proponents of the exclusion explained the intended scope of the exclusion for "professional services" in presentations to the Consumer Protection Division and the Legislature:

[T]he term "professional services" means the quality of care rendered by a health care provider in the marketplace, but it does not apply to the commercial or entrepreneurial services, such as billing, reimbursement, or advertising and marketing.

Letter from Vikram Khanna, Principal, State Health Policy Solutions, LLC to William Leibovici, Chief, Consumer Protection Division (March 3, 2003) at p. 2, also submitted by the Association of Maryland Hospitals and Health Systems to the House Economic Matters Committee in connection with the hearing on House Bill 294 (2003) and to the Senate Finance Committee in connection with the hearing on Senate Bill 283 (2003). The proponents related that definition to the underlying purpose of the exclusion:

This exemption expresses the legislature's intent to leave judgments about the quality of care provided by one of the listed, exempt health care professionals, in the hands of regulatory boards and commissions specifically empowered and qualified to consider them.

*Id.* at pp. 2–3. The proponents confirmed that the exclusion would not prohibit enforcement actions under the Consumer Protection Act against "hospitals and other providers for commercial or entrepreneurial actions that violate the [A]ct such as improper billing practices or false advertising." *Id.*

The General Assembly made a similar distinction when it amended the Consumer Protection Act to create a special unit within the Consumer Protection Division, called the Health Education and Advocacy Unit ("HEAU"). Chapters 296, 565, Laws of Maryland 1986 (creating subtitle 4A of the Consumer

Protection Act). The Legislature charged HEAU to "assist health care consumers in understanding their health care bills and third party coverage, in identifying improper billing or coverage determinations, and in reporting any billing or coverage problems to appropriate entities, including the [Consumer Protection] Division...." CL § 13–4A–02(b)(1).[15] Notably, the statute that establishes HEAU carves out disputes concerning quality of professional service or treatment. If a billing or coverage dispute concerns the "adequacy or propriety of any services or treatment," HEAU is to refer the matter to the appropriate licensing board. CL § 13–4A–03(b)(2). Where, as here, the billing dispute does not pertain to the adequacy or quality of treatment, but rather the provider's compliance with State law governing billing of HMO members, HEAU could refer the matter to the Consumer Protection Division for possible enforcement action under the Consumer Protection Act. The private right of action under CL § 13–408 has the same scope.[16]

Moreover, the administrative agency charged with interpreting and enforcing the Consumer Protection Act construes the statute to encompass the billing practices of health care providers. In an amicus brief filed in this case, the Consumer Protection Division has cited a number of actions it has

---

**15.** When the General Assembly made HEAU a permanent unit within the Consumer Protection Division in 1990 (by repeal of a sunset provision in the original enabling act), the sponsors of that legislation testified about the unit's role in resolving medical billing disputes under the Consumer Protection Act on behalf of "those who have been wronged by a health care provider." Testimony of Delegate Ruth M. Kirk before House Environmental Matters Committee concerning House Bill 571 (1990); see also Statement of Senator Leo Green before House Environmental Matters Committee concerning Senate Bill 298 (1990).

**16.** GCM and its supporting amicus, the Maryland State Medical Society, appear to concede that HEAU has a role in resolving medical billing issues—a role that would be hard to dispute given the language of Subtitle 4A of the Consumer Protection Act. But that concession contradicts their contention that the professional services that CL § 13–104(1) excludes from "this title"—i.e., the entire Consumer Protection Act—include medical billing.

brought against health care providers over the span of more than 20 years for violations of the Consumer Protection Act and other statutes relating to billing practices.[17]   This interpretation of the statute by the agency charged with administering it is entitled to considerable weight.   *E.g., Converge Services Group, LLC v. Curran,* 383 Md. 462, 479, 860 A.2d 871 (2004).

The distinction drawn above is consistent with the law's treatment of "professional services" in other contexts.   Professionals are generally licensed on the basis of specialized training, experience, and demonstrated competence.   The Business Occupations & Professions Article and the Health Occupations Article, as well as other articles, of the Maryland Code establish numerous such licensing regimes.[18]   Such professionals are generally held to a higher standard of care in rendering the professional services associated with the particular profession.   *See, e.g., Heavenly Days Crematorium, LLC v. Harris, Smariga and Associates, Inc.,* 433 Md. 558, 72 A.3d 199 (2013).   Their conduct in providing such services is generally regulated by specialized boards, such as the Maryland Board of Physicians.   A private action alleging the negligent performance of professional services is often subject to threshold requirements, including the filing of a certificate by an expert in the field.   *Id.* But not everything that a licensed professional does is a "professional service."   *Id.* at 570, 72 A.3d 199 (statute creating special condition to bring an action alleging negligent provision of professional services "does not erect a special fence around licensed professionals that pro-

---

**17.**   The amicus brief further advises that the Maryland Board of Physicians, the licensing board for medical practitioners, itself refers complaints concerning medical billing practices to the Consumer Protection Division.

**18.**   All of the professionals listed in the exclusion in CL § 13–104(1) must be licensed under State law in order to practice the profession, except for "clergyman" and Christian Science practitioner.   The absence of a licensing regime for the latter professions is obviously due to the constitutional guarantee of free exercise of religion.   *See Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952).

tects them from claims of ordinary negligence"). With respect to a statute of limitations relating to claims based on the "professional services" of a health care provider, this Court has held that such claims must involve the "rendering or failure to render health care." *Swam v. Upper Chesapeake Medical Center*, 397 Md. 528, 535–36, 919 A.2d 33 (2007); *see also Cannon v. McKen*, 296 Md. 27, 34, 459 A.2d 196 (1983); *Nichols v. Wilson*, 296 Md. 154, 160, 460 A.2d 57 (1983). Thus, Maryland law in other respects distinguishes the commercial and entrepreneurial aspects of a medical practice from the actual rendering of health care services when applying laws relating to "professional services."

This distinction is not unique to Maryland. Courts in other jurisdictions have similarly held that billing and other commercial aspects of a medical practice are not exempt from consumer protection laws. *See, e.g., Darviris v. Petros*, 442 Mass. 274, 812 N.E.2d 1188, 1193 (2004) ("consumer protection statutes may be applied to the entrepreneurial and business aspects of providing medical services, for example, advertising and billing, even though those statutes do not reach medical malpractice claims"); *Haynes v. Yale–New Haven Hospital*, 243 Conn. 17, 699 A.2d 964, 974 (1997) (while entrepreneurial and commercial aspects of medical practice are subject to Connecticut Unfair Trade Practices Act, medical negligence or malpractice are not); *Nelson v. Ho*, 222 Mich.App. 74, 564 N.W.2d 482, 486 (1997) (unfair or deceptive practices in "the conduct of the entrepreneurial, commercial or business aspects of a physician's practice" are subject to the Michigan Consumer Protection Act); *Gadson v. Newman*, 807 F.Supp. 1412, 1415–21 (C.D.Ill.1992) (distinguishing business aspects of medical practice from non-business aspects and holding that the former are subject to "unfair or deceptive acts or practices" provision of Illinois Consumer Fraud Act); *Barnett v. Mercy Health Partners–Lourdes, Inc.*, 233 S.W.3d 723, 729–30 (Ky. Ct.App.2007) (Kentucky Consumer Protection Act applies to business aspects of medical practice, but not to allegations of medical negligence); *Quimby v. Fine*, 45 Wash.App. 175, 724 P.2d 403, 405–6 (1986) (entrepreneurial aspects of medical

practice, including billing, are subject to Washington Consumer Protection Act).

GCM proposes a broad reading of "professional services" rooted in a different statute. It is based on the premise that any physician misconduct that might result in discipline by the Maryland Board of Physicians is necessarily part of the "professional services" exempt from the Consumer Protection Act. Apart from the fact that this argument appears somewhat inconsistent with its suggestion, in connection with the question of a private cause of action under the HMO Act, that the balance billing prohibition is to be enforced against physicians by the Insurance Commissioner, nothing in the Medical Practice Act or the Consumer Protection Act indicates that their provisions are mutually exclusive.

Focusing on the Consumer Protection Act itself, GCM argues that its billing practices are exempt because they "relate to" professional services and are "essential to" professional practice. To support this interpretation, GCM cites *Hogan v. Maryland State Dental Ass'n*, 155 Md.App. 556, 843 A.2d 902 (2004). In *Hogan*, the plaintiffs sued the Maryland State Dental Association under the Consumer Protection Act for injuries allegedly suffered as a result of mercury contained in dental fillings. There was no question that the implanting of dental fillings was a professional service of a dentist and that a plaintiff could not pursue a claim under the Consumer Protection Act against a dentist for injuries suffered as a result of dental treatment. The focus of that case was whether a claim could be made against a third party, the dental association, concerning the use of mercury in fillings by its members. The court held that the claim against the association concerning dental services provided by dentists also fell within the exemption for professional services. As is evident, that holding did not depend on a broad conception of "professional services" that would encompass billing practices.[19]

---

**19.** In dismissing the claim under the Consumer Protection Act, the court also reasoned that the association was not a "merchant" under the Act and that dental fillings were not "consumer goods" purchased

In urging us to give a broad reading to the exemption for "professional services," GCM also relies on several decisions from the federal district court in Maryland dismissing claims brought under the Consumer Protection Act. None of those decisions concerns medical billing practices—or the billing practices of any profession, for that matter. To the extent that they discuss the professional services exemption in the Maryland Consumer Protection Act, they contain virtually no reasoning and are therefore of little assistance in resolving the question before us.[20]

In sum, the exclusion in CL § 13–104(1) applies only to the actual professional services of a physician. The commercial aspects of a medical practice, such as compliance with laws concerning who may be billed and how, are not exempt from the Consumer Protection Act. When those billing practices involve unfair or deceptive practices, as defined in the Consumer Protection Act, the medical practice may be subject to a private action brought by a person injured by the violation.[21]

---

separately from the professional services of dentists. 155 Md.App. at 564–65, 843 A.2d 902.

**20.** In the first of those decisions, which concerned an alleged kickback arrangement between insurance producers and a realtor, the court merely recited in cursory fashion that defendants had filed a motion to dismiss the Consumer Protection Act claim, that the plaintiff had opposed it, and that the court was dismissing the claim pursuant to the professional services exemption. *Robinson v. Fountainhead Title Group Corp.*, 447 F.Supp.2d 478, 490 (D.Md.2006). In a subsequent case involving attorneys acting as substitute trustees in a foreclosure action, the court, without analysis, cited *Fountainhead* for the proposition that the exemption applies even if defendants "were acting in some way other than their professional capacity." *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D.Md.2012). Perhaps realizing that this conclusion is somewhat at odds with an exemption for "professional services," the *Stewart* court hedged its dismissal of the complaint on the alternative ground that plaintiffs had failed to state a claim under the Consumer Protection Act. *Id.* at 768–69. *See also Butler v. Wells Fargo Bank*, 2013 WL 145886 at *3 (D.Md.2013).

**21.** GCM argues in its brief that Mr. Scull's claim under the Consumer Protection Act must also fail because no consumer goods or services were involved, its invoice was not an attempt to collect a consumer debt, the invoice was not unfair or deceptive, and Mr. Scull suffered no

## Conclusion

The State HMO law prohibits "balance billing" by health care providers as part of the legal foundation for the establishment of HMOs. But that law does not include an express or implied right of action by an HMO member against a health care provider for violation of that prohibition. An HMO member, however, may bring an action under the Consumer Protection Act against a health care provider who improperly bills the member in violation of the State HMO law in a way that also violates the prohibition against unfair or deceptive trade practices in the Consumer Protection Act. The exemption from the Consumer Protection Act for "professional services" does not preclude such an action.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE SPLIT EQUALLY BY THE PARTIES.

injury or loss. None of these contentions were decided by the courts below. On its face, it appears that the invoice involved a "consumer debt"—*i.e*, one incurred for "personal, household, [or] family ... purposes." CL § 13–101(d). In any event, GCM may pursue the remaining issues, which may require some factual elaboration, on remand.