*Andrews & Lawrence Professional Services, LLC and Galyn Manor Homeowners Association, Inc. v. David O. Mills, et ux.*, No. 5, September Term, 2019, Opinion by Booth, J.

**CONSUMER PROTECTION ACT – DEBT COLLECTION ACTIVITY BY LAWYER.** In the context of debt collection activity, not all services provided by a lawyer or a law firm fall within the "professional services" exemption under the Consumer Protection Act ("CPA"), Maryland Code Commercial Law Article ("CL"), § 13-104(1). Specifically, where: (1) the lawyer's services could be provided by any licensed debt collection agency without regard to whether the agency is affiliated with a lawyer or a law firm; or (2) where the alleged conduct by the lawyer or law firm violates the Maryland Consumer Debt Collection Act ("MCDCA"), the debt collection activities in question do not fall within the lawyers' "professional services" exemption of the CPA, thereby escaping the reach of the Act.

**CONSUMER PROTECTION ACT – APPLICATION TO VICARIOUS LIABILITY CLAIMS AGAINST CLIENT FOR LAWYER'S ACTIONS.** To the extent that the CPA's professional services exemption applies to a lawyer's professional legal services, the plain language of the exemption does not apply to vicarious liability claims against a lawyer's client. An expansive interpretation of the professional services exemption to cover an additional class of individuals is inconsistent with the purpose and intent of the CPA, and its remedial nature, which the General Assembly adopted to provide additional remedies not found in common law. Our decision to narrowly construe the CPA's statutory exemption is consistent with our treatment of statutory immunities, where we have held that a principal is not immune simply because the agent is immune; the principal must establish an independent basis to receive the benefit of immunity.

**VICARIOUS LIABILITY – AGENCY.** Under Maryland agency law, the attorney-client relationship is a principal-agent relationship under which vicarious liability claims may be brought.

IN THE COURT OF APPEALS

OF MARYLAND

No. 5

September Term, 2019

ANDREWS & LAWRENCE PROFESSIONAL
SERVICES, LLC AND GALYN MANOR
HOMEOWNERS ASSOCIATION, INC.

v.

DAVID O. MILLS, et ux.

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Booth, J.
Watts, J., concurs.
Getty, J., dissents.
Adkins, J., concurs and dissents.

Filed: January 28, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The General Assembly enacted the Consumer Protection Act ("CPA"), Commercial Law Article ("CL") § 13-101, *et seq.*, and the Maryland Consumer Debt Collection Act ("MCDCA"), CL § 14-201, to protect consumers from unfair or deceptive trade practices, including the collection of consumer debts. Under state law, debt collection activities are often undertaken by law firms, as well as non-lawyer debt collection agencies that are licensed by the State Collection Licensing Board to do business as a collection agency pursuant to the Maryland Collection Agency Licensing Act ("MCALA"), Business Regulations Article ("BR"), § 7-101.

The overarching purpose and intent of these remedial consumer protection and licensing statutes is to protect the public from unfair or deceptive trade practices by creditors engaged in debt collection activities. The CPA is a statutory enforcement umbrella under which a violation of MCDCA or MCALA is also a per se violation of the CPA. CL §§ 13-301(14)(iii); (xxix).

Under the CPA, the General Assembly has created a statutory exemption from its application for certain professionals when undertaking "professional services". CL § 13-104(1). Here, we are concerned with the exemption as it applies to professional services provided by a lawyer. In this case, we must determine the scope of the professional services exemption under the CPA when a lawyer or law firm is engaged in debt collection activities on behalf of a client. If the lawyer's debt collection activity is exempt under the CPA, we must also determine whether the professional services exemption also applies to vicarious liability claims brought by a third party against the client arising out of the lawyer's conduct.

This case arises out of a private cause of action brought by David and Tammy Mills against their homeowners association, Galyn Manor Homeowners Association, Inc., ("Galyn Manor") alleging in part, violations of the CPA and MCDCA in connection with Galyn Manor's attempt to collect delinquent homeowners association ("HOA") assessments, fines, penalties and attorney's fees over the course of nine years. Galyn Manor retained the law firm of Andrews & Lawrence Professional Services, LLC ("Andrews") to undertake debt collection activities for delinquent HOA assessment accounts.

Andrews, on behalf of Galyn Manor, employed a variety of means to collect the debts allegedly owed by the Millses, including obtaining two judgments, four liens, an injunction, and garnishment of the Millses' bank account. The Millses alleged that although they made payments, and attempted to settle their account, Andrews's collection practices left them in a never-ending debt spiral.

In 2016, the Millses filed suit against Galyn Manor challenging its debt collection practices under the CPA and MCDCA. Galyn Manor filed a third-party complaint against Andrews for indemnification.

After the circuit court entered judgment as a matter of law against the Millses on their CPA and MCDCA claims, the Millses appealed. The Court of Special Appeals reversed the circuit court on these counts. We granted a writ of certiorari to determine whether a client can be vicariously liable under the CPA for deceptive trade practices undertaken by its attorney when the attorney is engaged in debt collection activities on its behalf. To answer this question, it is also necessary to determine whether, consistent with our holding in *Scull v. Groover, Christie & Merritt, PC*, 435 Md. 112 (2013), all activities

2

or services undertaken by a lawyer or a law firm when collecting consumer debts fall within the professional services exemption under CL § 13-104(1).

For the reasons set forth herein, we hold that when a lawyer is engaged in debt collection activities, not all of the lawyer's services fall within the "professional services" exemption of the CPA. Specifically, we hold that where the lawyer is engaged in debt collection activities that could be performed by any licensed debt collection agency not affiliated with a lawyer or a law firm, or where the lawyer's conduct would be prohibited by the Maryland Consumer Debt Collection Act, such conduct or services are not "professional services" for which the CPA exemption applies. We further hold that where the professional services exemption does, in fact, apply to the lawyers' "professional services," the statutory exemption does not flow to the client. Accordingly, we affirm the judgment of the Court of Special Appeals.

## I.  BACKGROUND

In 2004, Mr. and Mrs. Mills purchased a home in the Galyn Manor subdivision, in Frederick County. Galyn Manor is a residential community that is subject to the Maryland Homeowners Association Act, which is codified at Maryland Code, Real Property Article ("RP") § 11B-101, *et seq.* Under the Maryland Homeowners Association Act, lots within the community are subject to a declaration, which is enforceable by the governing body of the association, as well as other governing documents such as its bylaws, and rules and regulations promulgated and adopted in accordance with the declaration and other governing documents.

3

Like many homeowners associations, the Galyn Manor declaration and bylaws require members to comply with certain rules and restrictions, and to pay annual assessments, which are due in quarterly installments. To collect delinquent HOA assessments, the Maryland Homeowners Association Act and the Galyn Manor declaration give the HOA the right to impose a lien on a lot for the unpaid assessment under the Maryland Contract Lien Act ("MCLA"). RP § 11B-117(b). The HOA, through its Board of Directors, may also initiate collection proceedings and obtain a judgment against a homeowner for delinquent assessments. Under the declaration, delinquent assessments accrue interest and late fees, and the HOA may also recover its attorney's fees and costs when undertaking collection efforts to collect unpaid assessments.

The Galyn Manor governing documents also authorize the HOA to fine members who violate certain sections of the declaration and bylaws. Specifically, under the declaration, the Board has the authority to adopt and publish rules and regulations and to establish monetary fines for certain infractions. Prior to the imposition of a fine, the Board is required to send written notice to the owner specifying the nature of the infraction and to provide the owner with an opportunity for a hearing before the Board regarding the infraction and any penalty to be imposed.

### 2007 Fines for Parking Work Truck in Violation of Covenants

In February 2007, Galyn Manor's former management company, Chambers Management, Inc. ("Chambers"), discovered that the Millses regularly parked a work truck in their driveway. Chambers notified the Millses that this conduct constituted a violation of the declaration. The Millses were given 30 days to correct the violation. Chambers then

4

proceeded to send letters to the Millses advising them that Galyn Manor was imposing a fine against them in the amount of $50 for each day that the commercial vehicle was parked on their property. By the end of 2007, the fines for the alleged violations associated with the unlawful parking of the commercial vehicle accumulated to $645. In October 2007, Chambers sent another letter to the Millses, informing them of the amount they owed. The letter stated that it was a "final notice," that the Millses had until November 26 to pay, and that the letter served as "an attempt to collect a debt[.]"

### *Collection Efforts by Andrews & Lawrence*

In January 2008, Galyn Manor retained Andrews to provide legal services and to collect overdue assessments on behalf of the Association. Andrews is licensed as a debt collection agency with the Maryland Collection Agency Licensing Board,[1] and the Millses' account was turned over to Andrews for debt collection.

Between January 2008 and May 2015, Andrews attempted to collect dozens of fines, fees, costs, and assessments against the Millses. Andrews's collection activity included sending letters to the Millses, all of which are unsigned and identify, as their sender, "Andrews Law Group, LLC" or "Andrews & Lawrence Law Group, LLC," rather than any specific individual. Andrews enclosed with most of these letters a document titled "Andrews & Lawrence Law Group, LLC Statement of Account," reflecting that the firm itself maintained the operative account of the Millses' asserted debt. Beginning in June

---

[1] The record reflects that Andrews's debt collection activities required licensure with the Maryland Collection Agency Licensing Board because the firm had an employee who was "not a lawyer" and who was "engaged primarily to solicit debts for collection" or "primarily ma[de] contact with a debtor to collect or adjust a debt." BR § 7-102(b)(9).

2012, the unnamed sender of these letters could be reached by email at info@AndrewsLawGroupLLC.com. Each letter ended with the following two sentences, presumably included for compliance with the federal Fair Debt Collection Practices Act ("FDCA"): "This letter is an attempt to collect a debt, and any information obtained will be used for that purpose. We are attorneys engaged in the practice of debt collection."

Most of the communication concerning the Millses' delinquent account was undertaken through Andrews's collection paralegal, Kaya Thompson. Emails and documents reflect that over the years, the Millses communicated with Ms. Thompson on various occasions attempting to ascertain the account balance and nature of the fees and charges being assessed, and to work out payment arrangements. On a few occasions, the Millses proposed payment plans to Ms. Thompson, who would in turn communicate the proposal to the Galyn Manor Board of Directors. Once the Board communicated its response to Ms. Thompson, she would relay those communications to the Millses.

When Andrews began sending collection letters and account statements to the Millses in January 2008, the statement of account from January 2008 included the $660 in fines for the disputed commercial truck violations. In March 2008, Galyn Manor, through Andrews, charged the Millses a $1,500 administrative fee, which it added to the $660 in fines, more than doubling the Millses' account balance. The basis for the administrative fee is not clear from the record.

The Millses had been up to date with their annual assessment payments through 2007 but were not able to pay the fines. In January 2008, the Millses began to fall behind in their quarterly assessment payments of $105. Andrews notified the Millses in April

2008 that they owed $2,632.84 in "assessments due, late fees and costs of collections, including attorney's fees authorized by the Declaration." The letter did not specify whether the fines from the parking violations were included in the stated amount. Andrews warned the Millses that it would accelerate the debt and file a lien under the Maryland Contract Lien Act ("MCLA") if the Millses did not satisfy the debt within 30 days. Andrews further advised the Millses that the debt would be presumed valid unless the Millses disputed its validity within 30 days. The Millses did not dispute the debt or otherwise respond to the letter within the 30-day period. A statement of lien was filed and recorded in June 2008 in the amount of $3,581.88. This amount represented the amount due and owed at the time— $2,632.84, plus interest, late fees, attorney's fees, and costs.

The Millses responded to the notice in August 2008. In a handwritten letter to Andrews, the Millses agreed to "make payment arrangements for all overdue quarterly HOA dues[,] but dispute[d] the validity of all other fines." The Millses further stated that they were preparing "factual evidence to proceed with a hearing." The Millses did not explain their failure to respond within the 30-day period.

Andrews sent the Millses a second notice of acceleration and intent to file a lien in August 2010. Andrews stated that the Millses owed $4,256.88 in assessments, late fees, costs, and attorney's fees. Andrews provided the Millses with their rights under the MCLA, and the Millses again failed to respond within 30 days. Thereafter, a statement of lien in the amount of $4,791.58 was filed and recorded.

In October 2010, Galyn Manor filed a complaint against the Millses in the District Court of Maryland sitting in Frederick County for unpaid assessments accruing between

7

January 2009 and October 2010. The district court entered judgment in favor of Galyn Manor in the amount of $1,872.93, representing unpaid quarterly assessments and $600 in attorney's fees. In July 2011, Andrews filed a writ of garnishment against the Millses, seeking to garnish funds in the Millses' bank account to satisfy the judgment.

Shortly thereafter, the Millses asked Galyn Manor to rescind the garnishment. The Millses communicated this request through Andrews's paralegal, Ms. Thompson. Galyn Manor's board president communicated to Ms. Thompson that the Board had agreed to revoke the garnishment against the Millses' bank account on the condition that the Millses enter into a promissory note agreeing to pay $130 per month, based on a recognition by the board members that a larger payment might be "way too much to expect," and that Galyn Manor would not benefit if the family went bankrupt.

The Millses executed a promissory note for $3,429 in August 2011. The note obligated the Millses to make monthly payments of $130. The note also included a confessed judgment clause.

On January 3, 2012, four months after the Millses executed the promissory note, Andrews wrote to thank them for their monthly payment of $130 and noted that they still owed $3,044.60. Andrews enclosed a statement of account reflecting the balance of $3,044.60 and which also reflected that the Millses had made at least four monthly payments of $130 under the promissory note.

Six months later, in June 2012, Andrews sent another letter thanking the Millses for a $300 payment and noted that their arrearage was now *$14,433.86.* As part of the recalculated arrearage, Andrews's statement of account for June 2012 reflected additional

8

fines and charges, including a charge of $6,450, which was reflected on the statement of account as a block entry for March 2011. These additional charges were placed on the Millses' account after Galyn Manor hired a new management agent, Tom Van Pelt. Specifically, in March 2012, Mr. Van Pelt wrote to Andrews advising that he had recently taken over the management affairs for Galyn Manor and had learned that the Millses had "violated" a previous agreement with the Association by storing their landscape business equipment outside. As a result, Mr. Van Pelt instructed Andrews to "proceed and reinforce all prior enforcement, including liens, and reassert all charges." There is no evidence in the record that the Mills family was given any notice of these fines, or the legal authority or basis for the fines.

By May 2013, according to another unsigned letter from Andrews thanking the Millses for another $130 payment, the family's debt to Galyn Manor had grown to $15,473.75. According to the statement of account attached to that letter, the balance now consisted of the following charges:

- the initial $660 balance of January 2008;

- $2,426,26 in total quarterly assessments by Galyn Manor beginning in January 2008;

- $315 in late fees;

- $10,000 in "miscellaneous" charges (including the $6,450 block imposition of "fines," described above);

- $5,268 in costs, many appearing to be charges for Andrews's collection efforts; and

- $1,195.19 in interest

9

Against the $19,864.75 in charges, the Mills family had made total payments of $4,391. Based upon the evidence in the record, from January 2008 to May 2013, the Mills family had paid Galyn Manor nearly $2,000 more than the total amount of Galyn Manor's quarterly assessments ($4,391 in payments, against $2,426.26 in quarterly assessments). Yet the family had fallen into more than $15,000 in debt over the same period.

Galyn Manor filed another district court complaint in August 2014 seeking $2,697.53 for unpaid assessments, plus an additional $600 in attorney's fees together with $120 for service of process. Upon receipt of the summons, Mr. Mills emailed Ms. Thompson attempting to understand the nature of sums that were the subject of the lawsuit and to work out a payment plan to get current on the unpaid assessments:

> We just got served with papers showing the amount of all past due[] [HOA] fees. This amount will clear all past due quarterly installments and put us back up to date with the October 2014 assessments due, correct? I am just making sure because we do agree to pay you the amount of all past due quarterly fees that we owe.
>
> I will still file with courts [sic] to make sure this clears everything. Should we get on a payment plan for that amount now and clear everything up on the court date?

Ms. Thompson responded to Mr. Mills the same day, enclosing a statement of account reflecting a balance of $9,249.14. She explained that the district court suit only sought to collect the past-due assessments that had accrued for the past three years, and acknowledged that their collection efforts included attempts to collect debts dating back to the initial $660.00 charge from January 2008:

> The summons you were served with . . . does not show all past due HOA fees. It reflects assessments and costs of collection

10

between October 2011 through December 2014. The total balance due on your account for assessments from January 2008 (with a beginning balance of $660.00) through December 2014 and costs of collection through September 8, 2014 is $9,249.14 (statement of account is attached). According to our records, the trial date is scheduled for November 7, 2014. If we are able to get a payment plan in place with enough time to spare, we would prepare a stipulation of dismissal based on the agreement, and once it has been signed by both Defendants, and the attorney, it would be filed with the court thus dismissing the current action. *The payment plan would be based upon the full balance due*.

(emphasis added). The above exchange reflects that Ms. Thompson recognized that Galyn Manor could only sue for the past-due assessments which had accrued within the three-year statute of limitations window but was nonetheless proposing a settlement that would include fines and other miscellaneous charges dating back to 2007.

A consent judgment of $3,297.53 was entered in November 2014. In May 2015, Galyn Manor garnished $3,497.94 from the Millses' bank account. Subsequently, Andrews filed a notice of satisfaction in the district court case reflecting payment in full for the delinquent HOA assessments that had accrued between October 2011 and October 2014.

In February 2015, Andrews sent the Millses a new undated, unsigned letter advising that their account was in arrears and that the new past-due amount was $10,303.61, which included assessments through February 2015. Andrews advised that Galyn Manor intended to file a lien for the full amount of the arrearage under the MCLA and that if the Millses disputed the debt, they were required to file a complaint in the circuit court within 30 days. The statement of account included the initial $660 in fines from January 2008, the $1,500 miscellaneous administrative charge, and a miscellaneous

11

charge dated March 2011 in the amount of $6,450 described as "fines." By May 2015, the Millses alleged that Galyn Manor had recorded $28,938.83 in liens against their property under the MCLA.

## II.   PROCEEDINGS BELOW

After enduring nearly ten years of collection efforts against them with no apparent end in sight, the Millses commenced this suit in the Circuit Court for Frederick County in April 2016. In March 2017, the Millses filed an amended complaint alleging that Galyn Manor's collection efforts violated the CPA and the MCDCA. The Millses also brought conversion and breach of contract claims. Galyn Manor filed a third-party complaint against Andrews, contending that Andrews agreed to indemnify Galyn Manor for any liability under its professional services agreement.

In a memorandum opinion, the circuit court granted Galyn Manor's summary judgment motion on the CPA claim, reasoning that the statute specifically exempts attorneys from liability. As a result, the circuit court held that Galyn Manor could not be vicariously liable for its attorney's actions. The circuit court also awarded Galyn Manor judgment as a matter of law on the MCDCA claim, ruling that the Millses improperly used the statute as a vehicle to dispute the validity of the debt, whereas the statute only proscribes certain methods of collecting the debt.

The circuit court also granted Galyn Manor judgment as a matter of law on the conversion and breach of contract claims that arose before April 1, 2013, holding that such claims were barred by the statute of limitations. The Millses' claims that arose after April 1, 2013, proceeded to trial. At the close of the Millses' case, the circuit court awarded

12

Galyn Manor judgment as a matter of law, concluding that the Millses did not present sufficient evidence to satisfy the elements of a breach of contract or conversion claim.

The Millses timely appealed and the Court of Special Appeals affirmed in part, reversed in part, and remanded in part. *Mills v. Galyn Manor Homeowner's Ass'n*, 239 Md. App. 663 (2018). With respect to the Millses' CPA claim, the Court of Special Appeals held that the circuit court erred in finding as a matter of law that the lawyers' exemption for "professional services" under the CPA shielded Galyn Manor from either direct liability or vicarious liability for deceptive trade practices under the statute. *Id.* at 674. The intermediate appellate court distinguished *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012), in which the District Court held that a HOA could not be held vicariously liable under the Fair Debt Collection Practices Act ("FDCPA") when the HOA did not independently qualify as a "debt collector" under the statute. *Mills,* 239 Md. App. at 674. The Court of Special Appeals noted that unlike the FDCPA, which only imposes liability on "debt collectors," the CPA, with some statutory exemptions, functions to hold any "person" liable, regardless of whether that person holds herself out as a debt collector. *Id.* The court reasoned that Galyn Manor qualifies as a "person" subject to liability under the CPA; therefore, "it would be improper for Galyn Manor to evade liability by hiring an attorney to commit violations on its behalf." *Id.* (cleaned up) (internal citations omitted). The court further noted that under Maryland agency law, a principal may be held vicariously liable when the agent is immune. *Id.* at 675 (citing *TransCare Md. Inc. v. Murray*, 431 Md. 225 (2013); *D'Aoust v. Diamond*, 424 Md. 549,

13

607 (2012)).[2] Accordingly, the intermediate appellate court held that Galyn Manor could be held vicariously liable for deceptive trade practices under the CPA even if the professional services exemption applied to Andrews. *Id.*

The Court of Special Appeals also vacated and remanded the circuit court's granting of judgment as a matter of law on the Millses' MCDCA claim. *Id.* at 680. The court noted that to state a claim under MCDCA, the Millses "must establish two elements: (1) Galyn Manor did not possess the right to collect the amount of the debt sought; and (2) Galyn Manor attempted to collect the debt knowing that it lacked the right to do so." *Id.* at 677 (cleaned up) (citing *Barr v. Flagstar Bank*, *FSB,* 303 F. Supp. 3d 400, 420 (D. Md. 2018)). The court noted that the Millses did not dispute that they owed several months of delinquent assessment fees; rather, they alleged that Galyn Manor lacked the legal right to file liens because the statute of limitations had expired under the MCLA. *Id.* at 679. Accordingly, the Court of Special Appeals held that the Millses may pursue the MCDCA claim because they challenge Galyn Manor's methods in filing liens. *Id.* The court further noted that the Millses' "primary contention is that Galyn Manor levied fines against [them] that were not authorized by the HOA's governing documents." *Id.* On remand, the court directed the "circuit court to consider whether these fines are the type of 'unauthorized charges' covered by the statute." *Id.* The Court of Special Appeals

---

[2] Galyn Manor and Andrews also urged the Court of Special Appeals to conclude that the Millses' debts did not arise out of a "consumer transaction" and that the debts therefore do not fall within the purview of the CPA. The court declined to address this issue because it was not raised at the trial court. In *Goshen Run Homeowners Association v. Cisneros*, ___ Md. ___ (2019), we addressed this issue and held that efforts to collect HOA assessments fall within the purview of the CPA.

14

"direct[ed] the circuit court to determine, in light of *Allstate Lien* [*& Recovery Corp. v. Stansbury*, 219 Md. App. 575 (2014)*, aff'd* 445 Md. 187 (2015)] and *Barr*, whether there is any dispute of material fact as to whether Galyn Manor had the right to collect each debt, and if not, whether Galyn Manor knew that it did not have such right." *Id.* at 679–80.

On the breach of contract claim, the Court of Special Appeals affirmed the circuit court's granting of Galyn Manor's motion for summary judgment on claims that arose before April 1, 2013, on the basis that such claims were barred by the statute of limitations. *Id.* at 683. The court declined to address the merits of any perceived error on the breach of contract claims arising after April 1, 2013, because the issue was not briefed on appeal. The intermediate appellate court also affirmed the circuit court's entry of judgment in favor of Galyn Manor on the conversion claim. *Id.* at 684.

Finally, the Court of Special Appeals reinstated Galyn Manor's third-party complaint against Andrews in connection with the Millses' CPA and MCDCA claims pursuant to the indemnification clause contained in the professional services agreement between Galyn Manor and Andrews. *Id.* at 686.

Andrews and Galyn Manor then filed a petition for writ of *certiorari*, which this Court granted.

## III.   DISCUSSION

Galyn Manor and Andrews raise the following questions for our review on appeal, which we have rephrased as follows[3]:

---

[3] The question presented in the writ of *certiorari* was:

1. Whether the Maryland Consumer Protection Act's exemption for a lawyer rendering "professional services" applies to all services rendered by a lawyer when undertaking debt collection activity?

2. Whether the lawyers' "professional services" exemption under the Consumer Protection Act also exempts the lawyer's client from liability arising from the lawyer's conduct in debt collection activities taken on behalf of the client?

For the reasons set forth herein, we hold that, in the context of debt collection activity, not all services provided by a lawyer or a law firm fall within the professional services exemption under the CPA. Specifically, where: (1) the lawyer's services could be provided by any licensed debt collection agency without regard to whether the agency is affiliated with a lawyer or a law firm; or (2) where the alleged conduct by the lawyer or law firm violates the MCDCA, the collection activities in question do not fall within the lawyers' "professional services" exemption of the CPA and do not thereby escape the reach

---

The Maryland Consumer Protection Act "does not apply to" the "professional services" of a lawyer. In view of this exemption, can an attorney's client be deemed to have violated the Act, or otherwise be subject to a claim for damages, based solely on the conduct of its attorney that, absent the attorney's exemption, would, arguendo, constitute a violation of the Act?

As reflected above, the question presented included Petitioners' asserted conclusion of law, which assumes that all services rendered by a lawyer in the context of debt collection activity are "professional services" that are exempt from the CPA. As set forth herein, Petitioners' assumption is inconsistent with our holding in *Scull v. Groover, Christie & Merritt, PC*, 435 Md. 112, 132 (2013), and the interrelated debt collection statutes which regulate lawyers' conduct when undertaking debt collection activity. To fully address a client's vicarious liability for their lawyer's debt collection activities, it is necessary to first address the scope of the professional services exemption as it relates to the *lawyer's conduct*. By addressing both issues, our holding on vicarious liability claims will not be based upon erroneous assumptions concerning a lawyer's underlying liability under the CPA.

16

of the Act. Simply put, a license to practice law is not a license to engage in deceptive or unfair debt collection activities with impunity.

We further hold that to the extent that the CPA's professional services exemption applies to a lawyer's professional legal services, the plain language of the exemption does not apply to the lawyer's client. The General Assembly adopted the CPA to provide additional remedies not found in common law. An expansive interpretation of the professional services exemption to cover an additional class of individuals is inconsistent with the purpose and intent of the CPA and its remedial nature. We decline to adopt an expansive judicial interpretation of the statutory exemption. If there are reasons to expand the professional services exemption to include individuals not specifically identified in the statute, such expansion should be undertaken by the General Assembly.

Our narrow construction of the statutory exemption for professional services is consistent with our prior jurisprudence concerning the application of statutory and common law immunities in the context of vicarious liability claims. We have previously held that, where an agent has immunity, the principal is not entitled to immunity simply on the basis of the agent's immunity—the principal must establish an independent basis for immunity. We have previously treated the concept of statutory "immunity" and statutory "exemptions" synonymously and see no reason to deviate here.

Finally, consistent with our prior jurisprudence and the principles outlined in the Restatement, Restatement (Second) of Agency § 14N (Am. Law. Inst. 1958), we hold that under Maryland agency law the attorney-client relationship is a principal-agent relationship, pursuant to which vicarious liability claims may be brought.

17

For these reasons, as set forth more fully herein, we affirm the judgment of the Court of Special Appeals.

### A.      *Standard of Review*

Under Maryland Rule 2-501(f), "the court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."  Md. Rule 2-501(f) (2015).  When reviewing questions of law, this Court reviews the decision of the circuit court and the Court of Special Appeals without deference.  *See Chateau Foghorn v. Hosford*, 455 Md. 462, 483 (2017).

To determine whether there is a dispute of material fact, the court independently reviews the record.  *See Tyler v. City of College Park*, 415 Md. 475, 498 (2010) ("One way to defeat a properly supported motion for summary judgment is for the party opposing the motion to demonstrate to the court that there is a triable genuine dispute as to a material fact.").  The court reviews the record in the light most favorable to the nonmoving party and construes any reasonable inference against the moving party.  *See id.* at 499.  In our review, we consider "the grounds upon which the trial court relied."  *D'Aoust v. Diamond*, 424 Md. 549, 575 (2012) (citing *River Walk Apartments, LLC v. Twigg*, 396 Md. 527, 541–42 (2007)).  If there is no dispute as to a material fact, the moving party is entitled to summary judgement as a matter of law.  *Id.*  In this case, the issue involves a question of law.  Accordingly, our review is de novo.

### B.   *Parties' Contentions*[4]

Galyn Manor and Andrews contend that the professional services exemption under the CPA applies to all debt collection activities undertaken by Andrews. Andrews and Galyn Manor argue that collecting debt on behalf of clients is a professional service and that the General Assembly included the exemption so that the CPA would not interfere with an attorney's representation of clients. Andrews and Galyn Manor assert that the statutory exemption should apply not only to the lawyer's professional services, but also to any action against a client arising out of the lawyer's conduct. They assert that if the lawyer cannot be liable under the CPA, neither can the client for claims arising out of the lawyer's conduct.

Andrews and Galyn further contend that if the statutory exemption is not interpreted to apply to vicarious liability claims against a client, the effect would be to defeat the exemption in its entirety. Andrews and Galyn Manor argue that discrepancies exist between the Maryland Attorneys' Rules of Professional Conduct and the Consumer Protection Act, and that there are situations where an attorney may not be able to comply with both. Andrews and Galyn Manor argue that we should look to case law of other states, which they contend supports exemptions for legal services in their respective consumer protection laws.

Andrews and Galyn Manor also assert that under Maryland agency law, an attorney-client relationship is an independent contractor relationship rather than a principal-agent.

---

[4] Amicus briefs were also filed in this case by the Attorney General of Maryland, the Housing Initiative Partnership, Inc., and Civil Justice, Inc.

They argue that traditional agency principles do not apply, and the client cannot be vicariously liable for actions undertaken by a lawyer.

The Millses counter that interpreting the professional services exemption broadly to apply to clients defeats the remedial purpose of the CPA to prohibit deceptive business practices. The Millses contend that, because exemptions to remedial statutes must be narrowly construed, an additional exemption for clients must not be read into the statute. The Millses rely on *Scull v. Groover, Christie & Merritt, PC*, 435 Md. 112 (2013), to support a narrow construction of the exemption as applying only to the professional services of an attorney, rather than a blanket exemption for all actions of an attorney. Thus, the Millses contend, regardless of how broadly the Court finds the exemption, professional services of an attorney do not include debt collection.

Further, the Millses argue that statutory exemptions are similar to statutory immunity for purposes of claims alleging vicarious liability. They rely upon our prior cases for the proposition that principals must assert an independent basis for immunity regardless of the agent's immunity. Finally, the Millses contend that under Maryland agency law, an attorney-client relationship is one of an agent and a principal, and that traditional agency principles apply to vicarious liability claims.

### C. Analysis

Before we address the scope and application of the lawyer's professional service exemption under the CPA as it may relate to vicarious liability claims against a *lawyer's client*, it is necessary to examine the scope of the statutory exemption as it relates to the *lawyer's conduct* in the context of debt collection activities.

The CPA exempts from the scope of the Act, the "professional services" of an enumerated list of professions. CL § 13-104(1). [5] Pertinent to this case, the Act exempts the "professional services of a . . . lawyer." *Id.* "The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 301 (2001) (internal citations omitted). We have held that:

> When the statute to be interpreted is part of a statutory scheme, it must be interpreted in that context. That means that, when interpreting any statute, the statute as a whole must be construed, interpreting each provision of the statute in the context of the entire statutory scheme. Thus, statutes on the same subject are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or any portion, meaningless, surplusage, superfluous or nugatory.

*id.* (internal citations omitted). In this case, the CPA's professional service exemption as it pertains to a lawyer's service must be examined in the context of the CPA, as well as the interrelated debt collection statutes which fall within the broad statutory enforcement provisions of the Act.

---

[5] In its entirety, the statutory exemption under CL § 13-104 for professional services for certain professionals reads as follows:

> This title does not apply to: (1) [t]he professional services of a certified public accountant, architect, clergyman, professional engineer, lawyer, veterinarian, insurance company authorized to do business in the State, insurance producer licensed by the State, Christian Science practitioner, land surveyor, property line surveyor, chiropractor, optometrist, physical therapist, podiatrist, real estate broker, associate real estate broker, or real estate salesperson, or medical or dental practitioner . . .

## 1. Whether an Attorney Engaging in Debt Collection Activities is Exempt from the Consumer Protection Act

### *The Consumer Protection Act*

In 1973, the General Assembly enacted the Maryland Consumer Protection Act. The purpose of the CPA is to "set certain minimum standards for the protection of consumers across the State . . . ." CL § 13-102(b)(1). In enacting the CPA, the General Assembly found that "existing laws are inadequate, poorly coordinated and not widely known or adequately enforced." CL § 13-102(b)(2). As a result, the Legislature concluded that the State "should take strong protective and preventative steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices and to prevent these practices from occurring in Maryland." CL § 13-102(b)(3). To that end, the CPA prohibits all trade practices that are unfair, abusive or deceptive in, among other things, the collection of consumer debts. *See* CL §§ 13-301(14)(iii); 13-303(5). The General Assembly further instructed that the CPA shall be "construed and applied liberally to promote its purpose." CL § 13-105.

The CPA serves as a primary source of state oversight and regulation of debt collection activities. "Consumer credit" and "consumer debts" are express subjects of the CPA. *See* CL § 13-101(d) (defining "consumer credit" and "consumer debt" as "credit, debts or obligations . . . which are primarily for household, family, or agricultural purposes"). The CPA makes it unlawful to "engage in any unfair, abusive, or deceptive trade practice" in "[t]he extension of consumer credit" or "[t]he collection of consumer debts." CL §§ 13-303(4); (5).

To achieve its goals and enforce this prohibition, the CPA may be enforced through the Consumer Protection Division of the Office of the Attorney General, as well as through a private enforcement mechanism for injured consumers to obtain remedies. CL § 13-408. The Act's private cause of action, codified at CL § 13-408(a), provides that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the Consumer Protection Act]." CL § 13-408(a). The CPA exempts from the scope of the Act the "professional services" of an enumerated list of professions. CL § 13-104(1). Pertinent to this case, the Act exempts the "professional services of a . . . lawyer." *Id.*

We must determine the scope and application of the professional services exemption in the context of a lawyer's or a law firm's actions in undertaking debt collection activities. To make this determination, we must consider the CPA's role as a statutory enforcement tool for violations of *other* debt collection statutes. Specifically, the General Assembly has provided that a violation of MCDCA, as well as the MCALA are per se violations of the CPA. *See* CL §§ 13-301(14)(iii); (xxix). The interrelationship of these statutes is significant in our discussion of the scope of the professional services exemption under the CPA when the lawyer or his or her firm is engaging in debt collection activity.

### *The Maryland Consumer Debt Collection Act*

The MCDCA regulates any "person collecting or attempting to collect an alleged debt arising out of a consumer transaction." BR § 14-201(b) (defining "collector"). The MCDCA prohibits eleven categories of conduct when collecting debts, including placing harassing or abusive calls to a debtor or claiming, attempting, or threatening to enforce a

23

right with knowledge that the right does not exist. CL §§ 14-202(6); (8). The MCDCA also provides that a collector may not "[e]ngage in unlicensed debt collection activity in violation of the Maryland Collection Agency Licensing Act . . . ." CL § 14-202(10). Unlike the CPA, the MCDCA does not contain any exemption for lawyers engaged in debt collection activities.

Although MCDCA authorizes a private right of action (CL § 14-203), it does not provide for its own public enforcement. Rather, the General Assembly incorporated a provision into the CPA making it an "unfair or deceptive trade practice" to engage in conduct that violates the MCDCA. CL § 13-301(14)(iii).

### *Maryland Collection Agency and Licensing Act*

MCALA requires a collection agency[6] to be licensed by the State Collection Agency Licensing Board unless exempted by the Act. BR §§ 7-101; 7-301. Like the CPA, MCALA contains an exemption from the statute for lawyers providing professional services. Specifically, the statutory exemption under MCALA states that the statute does not apply to:

> a lawyer who is collecting a debt for a client, *unless* the lawyer has an employee who:
>
> (i)    Is not a lawyer; and
>
> (ii)    Is engaged primarily to solicit debts for collection or primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency . . . .

---

[6] "Collection Agency" is defined under MCALA as "a person who engages directly or indirectly in the business of: . . . collecting for, or soliciting from another, a consumer claim . . . ." BR § 7-101(d)(1)(i).

24

BR § 7-102(b)(9) (emphasis added). Under MCALA, the General Assembly has not categorically exempted all law firms from the licensing requirements of the statute. Specifically, where a lawyer or a law firm is acting like a debt collection agency—i.e., primarily providing debt collection services through non-lawyer employees—the General Assembly treats the lawyer or law firm providing these services in the same manner as any other debt collection agency for purposes of MCALA. A violation of MCALA is a violation of the MCDCA (CL § 14-202(10)), as well as a violation of the CPA (CL § 13-301(14)(xxix)).

### *Scope of the CPA's Professional Services Exemption in the Context of Attorney's Debt Collection Activity*

Against the backdrop of these interrelated debt collection statutes, we must determine the scope of the professional services exemption under the CPA when a lawyer or a law firm is engaged in debt collection activities.

There is no definition of "professional services" contained in the CPA. Nor is there any legislative history available pertaining to the 1974 enactment of what is now CL § 13-104(1). In *Scull*, we reviewed the professional services exemption in the context of medical billing practices. 435 Md. at 115. Specifically, we were asked to determine whether billing practices of a health care provider fell within the "professional services" of a "medical practitioner" and were therefore exempt from CL § 13-104(1). *Id.* After noting the lack of a definition of "professional services" and the lack of legislative history available for our review, we discussed at length the meaning of "professional services" in other contexts. *Id.* at 126–27. We examined Maryland statutes that establish licensing schemes for

25

professionals and that they receive licenses on the "basis of specialized training, experience, and demonstrated competence." *Id.* at 129. We noted that in other contexts, Maryland law "distinguishes the commercial and entrepreneurial aspects of a medical practice from the actual rendering of health care services when applying laws relating to 'professional services.'" *Id.* at 130.

We concluded that "not everything that a licensed professional does is a 'professional service.'" *Id.* at 129 (citing *Heavenly Days Crematorium, LLC v. Harris, Smariga & Assoc., Inc.*, 433 Md. 558, 570 (2013) (holding that a statute creating a special condition to bring an action alleging negligent provision of professional services "does not erect a special fence around licensed professionals that protects them from claims of ordinary negligence"). We declined to adopt the broad interpretation of "professional services" advanced by the physician's practice. *Id.* at 132. In doing so, we held that:

> [T]he exclusion in CL § 13-104(1) applies only to the actual professional services of a physician. The commercial aspects of a medical practice, such as compliance with laws concerning who may be billed and how, are not exempt from the Consumer Protection Act. When those billing practices involve unfair or deceptive trade practices, as defined in the Consumer Protection Act, the medical practice may be subject to a private action brought by a person injured by the violation.

*Id.*

Consistent with our holding in *Scull*, we decline to adopt a blanket professional services exemption under the CPA for all conduct undertaken by a lawyer or a law firm when the lawyer or firm is engaged in debt collection activity. Such an interpretation would be inconsistent with related debt collection statutes enacted by the General Assembly.

26

As discussed above, under MCALA, the statute does not apply to a lawyer who is collecting a debt for a client *unless* the lawyer has a non-lawyer employee who is "engaged primarily to solicit debts for collection or primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency." BR § 7-102(b)(9) (emphasis added). By carving out an exception to the exemptions under MCALA, the General Assembly recognized that not all professional services undertaken by a lawyer should be exempt from the licensing requirements of the statute. Where a law firm is undertaking the same activities as a collection agency through non-lawyer employees, the lawyer or law firm is treated no differently from a collection agency under MCALA. We decline to adopt a broad interpretation of the professional services exemption under the CPA which would be at odds with the exemption under MCALA for lawyers performing collection services primarily through non-lawyer employees. *See State v. Roshchin*, 446 Md. 128, 140–41 (2016) (noting that "it is a common maxim of statutory construction that related statutes governing the same subject are to be construed together and harmonized").

Similarly, the interpretation advanced by Andrews and Galyn Manor is also inconsistent with the application of the MCDCA. Under the MCDCA, there is no professional services exemption for lawyers. The CPA expressly provides that it is a violation of the CPA to engage in any debt collection activity prohibited by the MCDCA. CL § 13-301(14)(iii). It would be illogical to ascribe to the Legislature an intent to permit law firms acting as debt collection agencies to make harassing debt collection phone calls,

27

or to send debt collection letters knowingly claiming rights that do not exist, while prohibiting all other collection agencies from engaging in the same conduct.

We shall construe the general exemption for lawyer's "professional services" under the CPA consistently with the MCDCA and MCALA. Moreover, given the Legislature's incorporation of the specific prohibited conduct identified in the MCDCA into the general CPA statute which prohibits abusive, unfair and deceptive trade practices generally, we shall apply the long-recognized principle of statutory construction that a "specific statutory provision governs over a general one." *Clarksville Residents Against Mortuary Defense Fund, Inc. v. Donaldson Props.*, 453 Md. 516, 538 (2017) (internal quotations omitted) (quoting *Lumbermen's Mut. Cas. Co. v. Ins. Comm'r*, 302 Md. 248, 268 (1985)).

Here, Andrews is a licensed debt collection agency under MCALA. Galyn Manor retained Andrews to engage in debt collection services on its behalf. A factfinder could find that the conduct alleged by the Millses violated not only the CPA, but also the MCDCA, to which no exemption applies. A majority of the conduct alleged by the Millses to violate the CPA involves actions undertaken by Andrews's paralegal to collect debts on Galyn Manor's behalf. Over the years, Andrews's paralegal engaged in a range of debt collection activities, including: verbal and written communications with the Millses concerning their account balance; sending regular account statements reflecting the application of payments to the delinquent account, as well as the imposition of new assessments, fines, and fees (as directed by the HOA); acting as the intermediary between the Millses and the HOA concerning payment plans and settlement negotiations; and arranging for the execution and delivery of a promissory note for the repayment of debt.

28

These services do not require a professional license and may be performed by any collection agency.[7] Andrews's status as a law firm does not give its employees a free pass to violate the MCDCA when collecting consumer debts.

In conclusion, we shall interpret the "professional services" exemption of the CPA consistent with the provisions of MCALA and MCDCA. We hold that in the debt collection context, where a lawyer or law firm engages in debt collection activity which: (1) requires a license under MCALA; or (2) which would be prohibited under MCDCA, the professional services exemption of the CPA, CL § 13-104(1) does not apply to the conduct or services.

### *Andrews's Reliance on Out-of-State Cases is Inapposite and Inconsistent with our Cases*

In support of its position that the professional services exemption in the CPA should apply to all conduct of a lawyer or a law firm, Andrews and Galyn Manor argue that a contrary interpretation could create a conflict between a lawyer's obligation under the CPA and the lawyer's obligation to his or her client under the Maryland Attorneys' Rules of Professional Conduct ("MARPC"). To support its position, Andrews and Galyn Manor cite to three out-of-state cases—*Doyle v. Frederick J. Hanna & Associates, P.C.*, 695 S.E.2d 612 (Ga. 2010); *Averill v. Cox*, 761 A.2d 1083 (N.H. 2000); and *Short v. Demopolis*,

---

[7] Of course, some of the activities undertaken by Andrews would be considered professional services of a lawyer, which would be exempt from the application of the CPA. For example, Andrews's actions in filing lawsuits or filing liens under the MCLA would constitute professional services that only a licensed attorney could undertake. These actions were undertaken by Andrews as the agent of Galyn Manor. Although Andrews may be exempt from the CPA for any deceptive or unfair trade practices arising from such professional services, we hold in this case that its client is not.

691 P.2d 163 (Wash. 1984).  Andrews and Galyn Manor argue that these cases support their proposition that all lawyer's conduct should be exempt from consumer protection statutes on public policy grounds because the judiciary regulates the legal profession.

Andrews and Galyn Manor urge the Court to follow the Georgia Supreme Court's analysis in *Doyle.*  In *Doyle*, a divided (4-3) court held that a law firm's debt collection activity undertaken on behalf of clients did not fall within the Georgia Fair Business Practices Act (FBPA) even if certain services were provided by non-lawyers and could have been offered by a debt collection company without any lawyers.  695 S.E.2d at 615. The majority held that rendering debt collection services "is a necessary part of the practice of debtor-creditor law. Because Appellee was engaged in that very practice here, it was rendering a professional service.  Accordingly, its acts fall within the learned profession exemption."  *Id.*  (quoting *Reid v. Ayers*, 531 S.E.2d 231, 235–236 (N.C. App. 2000)) (internal brackets omitted).

We decline to follow the Georgia Supreme Court's analysis.  It is inconsistent with our decision in *Scull*, as well as our established case law which requires that we narrowly construe exemptions where the General Assembly has created remedies that are not found in common law.  *See Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 424 (2016) (explaining that to effectuate the purpose of a remedial statute, "exemption from remedial legislation must be narrowly construed").  Moreover, as noted above, it would be illogical for the General Assembly to prohibit debt collection agencies from engaging in conduct in violation of the MCDCA, such as making harassing debt collecting phone calls or sending

30

debt collection letters knowingly claiming rights that do not exist, while giving lawyers carte blanche to engage in such conduct in the name of rendering "professional services."

In *Averill*, the client brought an action against his attorney and his law firm alleging a violation of the New Hampshire consumer protection act in connection with the disposition of his workers' compensation settlement proceeds. 761 A.2d at 1086. In holding that the practice of law fell within the statutory exemption for professional conduct, which is regulated by a regulatory board, the Supreme Court of New Hampshire concluded that "our regulation of the practice of law is comprehensive and protects consumers from the same fraud and unfair practices as [the state's consumer protection act]." *Id.* at 1088.

We do not find the holding in *Averill* to be persuasive authority to support Andrews's and Galyn Manor's expansive interpretation of the professional service exemption. Our holding in this case does not disturb the lawyers' professional services exemption under the CPA which would preclude claims brought by a former client against his lawyer alleging CPA violations related to professional services rendered by the lawyer.

In *Demopolis*, a law firm sought to recover fees allegedly owed to it by a former client. 691 P.2d at 164. The former client filed a counterclaim alleging a violation of the Washington consumer protection act, in addition to alleging violations of the state's rules of professional responsibility and malpractice. *Id.* at 165. The client's consumer protection counterclaims fell into two categories. *Id.* at 168. The first category related to the lawyer's performance of services in failing to properly gather essential facts and properly evaluate the dissolution of a real estate partnership. *Id.* The second category related to the lawyer's billing and collection of attorney's fees. *Id.* The Washington Supreme Court found that

31

the first category, which alleged negligence or malpractice, were exempt from the consumer protection act. *Id.* The court found that the second category, related to the lawyer's billing and collection actions, were entrepreneurial aspects of the practice of law and were proper claims under the consumer protection act. *Id.* at 170. The court recognized that the Legislature carefully drafted the act to "bring within its reaches every person who conducts unfair or deceptive acts or practices in any trade or commerce." *Id.* at 168. Thus, the court concluded that certain aspects of the practice of law fall within the realm of conduct regulated by the consumer protection act. *Id.* at 168.

The Washington Supreme Court's decision in *Demopolis* is consistent with our holding in this case and our decision in *Scull.* The professional services exemption under the CPA applies to a lawyer's professional services. However, the CPA does not create a blanket exemption for lawyers and law firms to engage in unfair and deceptive trade practices when undertaking debt collection services, which would violate the CPA if the same services were undertaken by a debt collection agency or if the conduct would otherwise violate the MCDCA.

We note that other state supreme courts have embraced similar interpretations of their respective consumer protection acts and have declined to adopt a blanket exemption for all conduct by attorneys. In Connecticut, the state supreme court addressed the question of whether the Connecticut Unfair Trade Practices Act applied the practice of law. *Heslin v. Ct. Law Clinic*, 461 A.2d 938, 941 (Conn. 1983). The court determined that given the act's regulation of "the conduct of any trade or commerce," it "does not totally exclude all conduct of the profession of law." *Id.* at 943. In Alaska, the court applied the state's unfair

trade practices and consumer protection act to attorneys' debt collection activities. *Merdes & Merdes, P.C. v. Leisnoi*, 410 P.3d 398, 412 (Alaska 2017) (citing *Pepper v. Routh Crabtree APC*, 219 P.3d 1017, 1024 (Alaska 2009)). In Hawaii, the state supreme court held that an attorney cannot escape liability for actions prohibited by the state's unfair or deceptive acts or practices statute by claiming that the actions "constituted or were intermingled with legal services." *Goran Pleho, LLC v. Lacy*, 439 P.3d 176, 197 (Haw. 2019) (holding that when a defendant engages in the sort of actions that the court has held necessarily involve "conduct in any trade or commerce" within the meaning of HRS § 480-2(a), it is no defense that those actions constituted or were intermingled with legal services). These cases are consistent with our holding in *Scull*, as well as our holding here.

### Compliance with CPA and Maryland Attorneys' Rules of Professional Conduct

Andrews and Galyn Manor argue that if the CPA does not provide a blanket exemption for lawyers when undertaking debt collection services on behalf of a client, conflicts could arise under the lawyer's obligations to his or her client under the MARPC on the one hand, and his or her obligations under the CPA, on the other. For example, Andrews and Galyn Manor argue that lawyers must provide "full disclosure" to the consumer under the CPA, but that lawyers often engage in negotiations with debtors over an amount the parties are willing to settle for and often begin discussions at an amount that is more than a client is actually willing to accept. Given the nature of these settlement discussions, Andrews and Galyn Manor suggest that the lawyer's duty to his or her client could be inconsistent with their obligations to the debtor under the CPA.

33

We do not find this argument persuasive. In the context of debt collection activities undertaken by a law firm on behalf of a client, we believe it is both possible, and indeed a requirement of the law, for a lawyer to zealously represent his client's interests and to also comply with the minimum standards established by the debt collection requirements of the CPA and the MCDCA. For example, as noted above, there is no lawyers' professional services exemption for debt collection activity under the MCDCA. When attempting to collect a debt, a lawyer may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist. CL § 14-202(8). Where a client hires a law firm to undertake debt collection activities that could be undertaken by a debt collection agency, the law firm can and must comply with both the requirements of the MARPC and the debt collection parameters of the MCDCA and CPA.

### 2. Whether the Lawyer's Professional Services Exemption Under the CPA Applies to Vicarious Liability Claims Against a Client for the Attorney's Conduct

There may be instances where a lawyer or a law firm is undertaking professional services on behalf of a client when undertaking debt collection activities which could be exempt under the CPA's professional services exemption. For example, a lawyer might file a lawsuit to recover delinquent HOA fees on behalf of a client or may file a statement of lien under the MCLA. These are professional services which are undertaken by a lawyer to which the professional services exemption would apply.

The question before us today is whether a lawyer's client is included in the exemption. In other words, when an attorney acts on behalf of a client, may the client be held vicariously liable under the CPA for the actions of their attorney if the attorney

34

conduct is exempt from the Act? For the reasons set forth herein, we hold that the statutory exemption for a lawyer's professional services does not apply to vicarious liability claims against a client for the attorney's conduct.

### Plain Language of the Exemption; Purpose and Intent of CPA

The plain language of the statute is silent on whether the lawyers' exemption for professional services under the CPA flows through to a client who retains the services of a law firm to provide debt collection services. Andrews and Galyn Manor are asking this Court to supply an expanded judicial interpretation to the professional services exemption to cover potential vicarious liability claims, which may flow through to Andrews's client. For the reasons set forth herein, we decline to adopt such an expansive interpretation.

"A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). We begin first with the plain language to ascertain the General Assembly's purpose and intent. *Id*. at 275. Our goal is to construe the statute to advance its purpose, not to frustrate it. *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 423 (2016) (citing *Neal v. Fisher*, 312 Md. 685, 693 (1988)). In *Lockshin*, we summarized the applicable principles of our statutory analysis as follows:

> We . . . do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactment to operate together as a

35

consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

*Lockshin*, 412 Md. at 275–76 (internal citations omitted).

As noted above, the plain language of the professional services exemption does not include the professionals' clients within its language. Andrews and Galyn Manor asks the Court to supply an expanded interpretation of the statutory exemption for professional services, which is contrary to the purpose and intent of the CPA. The CPA prohibits all trade practices that are unfair and abusive trade practices in the collection of consumer debts. *See* CL §§ 13-301(14)(iii); 13-303(5). The General Assembly has specifically instructed that the CPA shall be construed and applied liberally to promote its purpose of protecting consumers. CL §§ 13-105, 13-102(3); *see also Scull v. Groover, Christie & Merritt, PC*, 435 Md. 112, 125 (2013).

Consistent with the Legislature's express directive, we have held that "[w]hen a statute provides remedies not available at common law, the statute is remedial." *Lockett*, 446 Md. at 424. "Once we have determined that a statute is remedial in nature, it must be liberally construed, in order to effectuate its broad remedial purpose." *Id.* (cleaned up) (citing *Pak v. Hoang*, 378 Md. 315, 326 (2003)); *see also Wash. Home Remodelers, Inc. v. State*, 426 Md. 613, 630 (2012) (noting that the CPA "constitutes remedial legislation that is intended to be construed liberally in order to promote its purpose of providing a modicum of protection for the State's consumers"). Indeed, this Court has warned against construing remedial statutes like the CPA with a "narrow or grudging process" that "exemplif[ies] and

36

perpetuate[s] the very evils to be remedied." *Pak*, 378 Md. at 326 (quoting *Neal,* 312 Md. at 694) (cleaned up).

For similar reasons, we have held that "exemptions from remedial legislation must be narrowly construed." *Lockett*, 446 Md. at 424 (quoting *State Admin Bd. of Election Laws v. Billhimer*, 314 Md. 46, 64 (1988)). Reading additional exemptions into a remedial statute limits the possibility of remedies beyond what the Legislature intended. "It is not our proper function to add to the statute another class of exemptions. That is a legislative function." *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 553 (2001). Therefore, to effectuate the intent of the General Assembly, we must narrowly construe the professional services exemption of the Consumer Protection Act.

We decline to interpret the statutory exemption for a lawyer's professional services to cover another class of individuals—the lawyer's clients—where no such exemption exists in the plain language of the statute, and where such an expanded interpretation would run contrary to the purpose and intent of this remedial statute. If the exemption should be expanded, then that is the role of the Legislature, not the role of this Court.

### Our Narrow Construction of the Statutory Exemption is Consistent with Our Treatment of Statutory Immunities

In holding that the professional services exemption does not apply to vicarious liability claims against the client, the Court of Special Appeals relied upon our cases discussing immunities, where we have held that a principal may be vicariously liable when an agent is immune. In *D'Aoust v. Diamond*, 424 Md. 549 (2012), we held "as a matter of law, that the principal in an agency relationship is not entitled to receive immunity simply

37

because the agent is entitled to receive immunity; the principal must establish an independent basis to receive the benefit of an immunity shield." *Id.* at 605–06. We further noted that under our existing case law, "unless there is an independent source of immunity for the employer or principal, a cause of action premised on vicarious liability can be brought even if the employee or agent is entitled to immunity." *Id.* at 607.

The intermediate appellate court also noted that we recently revisited our holding in *D'Aoust* to determine whether an employer could assert an employee's statutory immunity under the Good Samaritan Act. In *TransCare Md., Inc. v. Murray*, 431 Md. 225 (2013), we rejected the employer's attempts to "distinguish *D'Aoust* on the basis that it concerned common law immunity rather than statutory immunity," holding that our "conclusion applied to the concept of immunity generally as it relates to causes of action based upon vicarious liability." *Id.* at 242. Accordingly, we held that the employer could be held vicariously liable even though the tortfeasor was immune from liability. *Id.* at 242–43*; see also James v. Prince George's Cty.*, 288 Md. 315, 332 (1980) ("As a general rule . . . the master remains liable for the servant's conduct even through the servant himself is not liable because of a personal immunity.").

Further, Andrews and Galyn Manor argue that these cases are limited to servant-master relationships and therefore have no application to this case. We disagree. Although we have discussed the application of immunities in the context of servant-master relationships, our holding in those cases applies in the broader context of principal and agent relationships generally. *See TransCare*, 431 Md. at 242–43; *D'Aoust*, 424 Md. at 605–07.

Andrews and Galyn Manor contend that a statutory exemption is different from a statutory immunity and that, therefore, our analysis in the immunity context does not apply. We are not persuaded by this argument. Although this case involves the interpretation of a statutory exemption instead of the application of a common law immunity or statutory immunity, we agree with the Court of Special Appeals that we have previously treated "immunity" and "exemption" synonymously. In *Catonsville Nursing Home v. Loveman*, 349 Md. 560 (1998), we noted that "exemption" is defined as "[f]reedom from a general duty or service; *immunity* from a general burden," or "the state of being exempted; *immunity*." *Id.* at 576 (emphasis added) (citing *Exemption,* Black's Law Dictionary (6th ed. 1990); *Exemption*, The Random House Dictionary of the English Language (Unabridged ed. 1983)). We see no reason to treat statutory exemptions differently from statutory immunities for purposes of claims arising from vicarious liability. This interpretation is consistent with our holding that if the General Assembly believes that the exemption should be expanded to include another class of individuals or entities, it may do so.

### *Vicarious Liability and Agency*

Finally, Andrews and Galyn Manor assert that Galyn Manor cannot be vicariously liable for conduct by Andrews because they contend that the attorney-client relationship is unique and is more akin to an independent contractor relationship than a traditional principal-agent one. To support its assertion, they rely upon *Brady v. Ralph Parsons Co.*, 308 Md. 486 (1987), where we noted that "independent contractors generally considered to be agents include attorneys . . . and other similar persons who conduct transactions for their principal." *Id.* at 510, n.27 (citations omitted). Andrews and Galyn Manor cite *Brady*

39

for the proposition that "[t]he doctrine of respondeat superior does not ordinarily apply to the independent contractor relationship." *Id.* at 512. The argument advanced by Andrews and Galyn Manor misstates this Court's previous holdings on agency. *Brady* was a physical injury case and did not depart from our traditional reliance on Restatement principles in the context of agency. *Id.*

The Restatement and this Court's precedent establish that the relationship between a lawyer and client is ordinarily one of principal and agent, with the lawyer having the status of "an agent and also an independent contractor." *See* Restatement (Second) of Agency § 14N; *see also id.* § 1, cmt. e (attorneys are "agents, although as to their physical activities they are independent contractors"); *see also Henley v. Prince George's Cty.,* 305 Md. 320, 340, n.5 (1986) ("Independent contractors generally considered to be agents include attorneys . . . and other similar persons who conduct transactions for their principal."); *Advance Fin. Co. v. Clients' Security Trust Fund*, 337 Md. 195, 201 (1995) (considering the application of agency law to lawyers). Under the Restatement and our case law, no special principles apply to liability arising from the lawyer-client relationship. *See, e.g.,* Restatement (Second) of Agency § 253, cmt. a (discussing liability of client, as principal, for tortious institution of legal proceedings by lawyer, as agent); *Advance Fin. Co.*, 337 Md. at 201 ("agents are lawyers whose principals are clients").

In this case, the Millses contend that Galyn Manor is vicariously liable for actions undertaken by Andrews as Galyn Manor's agent. The party that claims the existence of an agency relationship has the duty to prove the nature and extent of the relationship. *See Green v. H & R Block,* 355 Md. 488, 503 (1999). To defeat a motion for summary

judgment, the party must present "legally sufficient evidence of a principal-agent relationship." *Id.* at 504. The presence of an agency relationship "turns on the parties' intentions as manifested by their agreements or actions." *Id.* at 503. Evidence of an agency relationship is not limited to an express agreement but may be implied from words and conduct. *See Medical Mut. Liab. v. Mut. Fire*, 37 Md. App. 706, 712 (1977) (clarifying that a principal and agent relationship is implied through the party's conduct and the circumstances).

We have held that the determination of the existence of a principal-agent relationship depends on three considerations: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Green*, 355 Md. at 503. "A principal need not exercise physical control over the actions of its agent in order for an agency relationship to exist; rather, the agent must be subject to the principal's control over the result or ultimate objectives of the agency relationship." *Id.* at 507–08.

The MARPC highlights the inherent agency relationship that exists between the attorney and client. Maryland Rule 19-301.2 requires that:

> an attorney shall abide by a client's decisions concerning the objectives of the representation and . . . consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation.

Thus, although the attorney provides advice, the client must make the ultimate decision as to the purpose of the litigation or legal involvement and the mechanisms the attorney employs to reach the goals of the litigation.

41

In this case, there is sufficient evidence for a factfinder to conclude that Andrews was acting at all times as Galyn Manor's agent when it engaged in debt collection activities. As the principal, Galyn Manor had the ability to select or discharge Andrews as its attorneys. As the agent, Andrews could alter the legal relation of the principal and was required to undertake its work for Galyn Manor's benefit. Specifically, the parties entered into an agreement whereby Andrews agreed to undertake the servicing of all HOA assessment accounts, including the collection of delinquent accounts "as directed by the client." When Andrews filed statements of lien against the Millses' property on behalf of Galyn, the attorney signed each statement as the "Attorney & Agent" of Galyn Manor. The evidence in the record establishes that Andrews's paralegal regularly consulted with Galyn Manor concerning the Millses' account, including the Millses' offers to resolve payment matters and efforts to enter into a payment plan. Similarly, evidence in the record reflects that Galyn Manor provided specific instructions to Andrews with respect to the collection of fines and charges, including the reinstatement of prior charges after Galyn Manor determined that the Millses had violated a previous "settlement agreement."

Andrews was clearly acting as Galyn Manor's agent when undertaking debt collection activities. Galyn Manor can be held vicariously liable for actions undertaken by Andrews in violation of the CPA.[8] To the extent that any portion of Andrews's conduct

---

[8] In further support of their argument that a client cannot be vicariously liable for a lawyer's actions under agency principles, Andrews and Galyn Manor point out that violations of the CPA can include criminal penalties, as well as civil remedies. This is not a criminal case. It is a civil case brought by the homeowners pursuing private remedies under CL § 13-408. We do not need to address whether a client can be held criminally

42

may be considered the rendering of professional services and therefore exempt under the CPA, the plain language of the statutory exemption does not apply to Galyn Manor, and any efforts to expand the exemption must be undertaken by the Legislature.

## IV.   CONCLUSION

For the reasons set forth herein, we hold that in the context of debt collection activity, not all services provided by a lawyer or a law firm fall within the "professional services" exemption under the CPA.  Specifically, where: (1) the lawyer's services could be provided by any licensed debt collection agency without regard to whether the agency is affiliated with a lawyer or a law firm; or (2) where the alleged conduct by the lawyer or law firm violates the MCDCA, the collection activities in question do not fall within the lawyers' professional services exemption of the CPA, thereby escaping the reach of the Act.

We further hold that to the extent that the CPA's professional services exemption applies to a lawyer's professional legal services, the plain language of the exemption does not apply to vicarious liability claims against a lawyer's client.  An expansive interpretation of the professional services exemption to cover an additional class of individuals is inconsistent with the purpose and intent of the CPA, and its remedial nature, which the General Assembly adopted to provide additional remedies not found in common law.  We decline to adopt an expansive judicial interpretation of the statutory exemption.  If there are reasons to expand the professional services exemption to include individuals not

---

responsible for his or her lawyer's conduct because that is not an issue before the Court in this case.

43

specifically identified in the existing language, such expansion should be undertaken by the General Assembly.

Our interpretation of the statutory exemption for professional services is consistent with our jurisprudence concerning the application of statutory and common law immunities in the context of vicarious liability claims. We have held that where an agent has immunity, the principal does not have immunity simply because the agent has immunity; the principal must establish an independent basis to receive the benefit of immunity. We have previously treated the concept of statutory "immunity" and statutory "exemptions" synonymously and see no reason to deviate here.

Finally, we hold that under Maryland agency law as well as the Restatement, upon which we frequently rely in the agency context, the attorney-client relationship is a principal-agent relationship under which vicarious liability claims may be brought.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**

Circuit Court for Frederick County
Case No. 10-C-16-000961
Argued: September 9, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 5

September Term, 2019
_____

ANDREWS & LAWRENCE PROFESSIONAL
SERVICES, LLC AND GALYN MANOR
HOMEOWNERS ASSOCIATION, INC.

v.

DAVID O. MILLS, et ux.
_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.
_____

Concurring Opinion by Watts, J.
_____

Filed: January 28, 2020

I join the majority opinion in its entirety. As to the holding that, under Maryland agency law, the attorney-client relationship is a principal-agent relationship under which vicarious liability claims may be brought against the principal, I agree with Judge Adkins's concurrence that clients should be liable for the conduct of their attorneys that violates the Consumer Protection Act (CPA) only where the clients are aware or have knowledge of the actions taken by the attorney that constitute the violation. Under traditional agency principles, the principal's right to control the agent may not necessarily include or require that the principal have actual knowledge of the agent's specific conduct. The traditional principal-agent relationship depends on: the agent's ability to alter legal relations of the principal; the agent's duty to act primarily for the benefit of the principal; and the principal's right to control the agent. Green v. H & R Block, Inc., 355 Md. 488, 503, 735 A.2d 1039, 1048 (1999). Where a lawyer is entitled to the professional services exemption under the CPA, a lawyer is necessarily engaging in activities that exceed mere debt collection activities, *i.e.*, rendering legal services. I agree with Judge Adkins that, to hold the client vicariously liable, we must ensure that the client is aware or has knowledge of the lawyer's activities.

IN THE COURT OF APPEALS
OF MARYLAND

No. 5

September Term, 2019

_____

ANDREWS & LAWRENCE PROFESSIONAL
SERVICES, LLC AND GALYN MANOR
HOMEOWNERS ASSOCIATION, INC.

v.

DAVID O. MILLS, et ux.

_____

Barbera, C.J.
McDonald,
Watts,
Hotten,
Getty,
Booth,
Adkins, Sally D.
   (Senior Judge, Specially Assigned)

JJ.

_____

Dissenting Opinion by Getty, J.

_____

Filed: January 28, 2020

Respectfully, I dissent.

Under a plain meaning analysis of the "professional services" exemption of the Maryland Consumer Protection Act ("CPA"), I would hold that the debt collection actions in this case are professional services provided by attorneys and are exempt from this statute. In its search for legislative intent, the Majority finds a symbiotic relationship between the CPA, the Maryland Consumer Debt Collection Act ("MCDCA"), and Maryland Collection Agency and Licensing Act ("MCALA")—such a relationship does not exist in the language of the CPA. Further, in relying on *Scull v. Groover, Christie & Merritt, P.C.*, the Majority overlooks the differences between the professional services of attorneys and the professional services of medical professionals. 435 Md. 112 (2013).

*Plain Meaning Analysis of the CPA Attorney Exemption*

In line with well-established principles of statutory interpretation, I would follow the clear language and intent of the "professional services" exemption and hold that the CPA establishes an exemption for attorneys providing services to their clients on debtor-creditor law.

The plain language of the attorney exemption is clear that the provisions of the CPA do not apply to the "professional services" of attorneys. Md. Code (1975, 2013 Repl. Vol.), Commercial Law ("CL") § 13-104. There are no exceptions and no qualifying words to this language. On its face, the language of the statute exempts all "professional services" of attorneys even though the statute does not define "professional services." *See Scull*, 435 Md. at 126 ("There is no definition of 'professional services' contained in the Consumer Protection Act.").

As such, we first turn to the dictionary as a starting point to determine the natural and ordinary meaning of the term "professional services." *Bottini v. Dep't of Fin.*, 450 Md. 177, 195 (2016). Black's Law Dictionary defines "professional" as "[s]omeone who belongs to a learned profession or whose occupation requires a high level of training and proficiency" and "service" as "[l]abor performed in the interest or under the direction of others; specif[ically] the performance of some useful act or series of acts for the benefit of another, usu[ally] for a fee." *Professional*, Black's Law Dictionary (11th ed. 2019); *Service*, Black's Law Dictionary (11th ed. 2019). These definitions demonstrate that a "professional service" is relevant labor performed for the benefit of another by someone belonging to a learned profession.

There is no question that debtor-creditor legal advice and debt collection for the benefit of the client are relevant services within the professional training of an attorney. In most cases, the attorney-client privilege is essential to effective representation. Debtor-creditor disputes are no different. Creating an exception to the exemption hinders the attorney-client relationship and rejects the General Assembly's intention as expressed by the plain language of the statute that such services be exempted.

*Unlike Medical Professionals, An Attorney's Professional Services Includes Advising Clients on Debtor-Creditor Law*

In a search for legislative intent, the Majority bypasses the plain language of the attorney exemption and instead relies on this Court's opinion in *Scull* where we delineated between the "professional services" of medical professionals versus the "entrepreneurial" services of medical professionals conducting their own marketing and billing. Unlike

medical professionals, a lawyer's "professional service" includes advising clients on debtor-creditor law and, as such, is governed by the disciplinary rules enforced by the Maryland Judiciary.[1] Unlike billing in the medical profession, providing advice on debtor-creditor law and debt collecting as a lawyer is a "service"—i.e. an act for the benefit of the client—that is relevant to the expertise and training of the attorney. *See Service*, Black's Law Dictionary.

The United States District Court for the District of Maryland addressed this exact question in *Stewart v. Bierman*, 859 F. Supp. 2d 754 (D.Md. 2012). There, the plaintiffs argued that the defendant attorneys "were not acting with the scope of their license as attorneys" when they were acting as trustees in a foreclosure proceeding, and therefore were "not entitled to claim any exemption from liability." *Id.* at 768. *Stewart* held that the attorneys were exempt based on a prior case where the court applied the attorney exemption to dismiss CPA claims against the enumerated professional even when the plaintiff alleged that the attorneys were acting outside of their professional capacity. *Id.* (citing *Robinson v. Fountainhead Title Grp. Corp.*, 447 F. Supp. 2d 478, 490 (D. Md. 2006) ("Plaintiff contends that she did not sue Long & Foster because of its activities as a realtor, but because it worked in conjunction with the other defendants to establish the sham company-

---

[1] The regulation of attorneys by "Rules of Professional Conduct" adopted by a state's highest court is not unique to Maryland. Nor is the blanket statutory exemption for attorneys from state consumer protection laws. *See, e.g.*, N.C. Gen. Stat. § 75-1.1(b) (1997) (exempting professional services rendered by members of learned professions); Ohio Rev. Code Ann. § 1345.01(A) (exempting "transactions between attorneys, physicians, or dentists and their clients or patients").

Assurance Title. Plaintiff's allegations, nonetheless, concern the "professional services" of Defendants and this claim will be dismissed."")).

In these two cases, *Stewart* and *Robinson*, the federal district court in Maryland has considered a nearly identical question about the professional exemption in the CPA and interpreted the statutory language in favor of a broad exemption for the enumerated professional services. Even though this Court, in *Scull*, described *Stewart* and *Robinson* as thinly reasoned and "of little assistance" to the question of what constitutes "professional services," the facts in *Scull* are distinguished and particular to the medical profession. *Scull*, 435 Md. at 132.

The Court in *Scull* relies on the legislative history of a distinct and separate section of the CPA—what is now § 13-408 of the Commercial Law Article ("CL")—which specifically concerns the "professional services" of healthcare providers. *Id.* at 126–27. The legislative history there expressly notes that CL § 13-408 is to apply to health care in the marketplace but not to commercial or entrepreneurial services such as billing or advertising. *Id.* at 127. The differences between the legal profession and the medical profession, along with the lack of any statute similar to CL § 13-408 relied upon in *Scull*, imply that the attorney exemption under the statute is different than the bifurcated exemption specified in the statutory language for medical professionals.

> *The Legislative History of the CPA Does Not Support Voiding the Attorney Exemption When an Attorney Is Advising a Client on Debtor-Creditor Law*

Despite the unambiguous language of § 13-104, the Majority seemingly finds ambiguity in the statutory language of the attorney exemption. Where there is ambiguity,

4

this Court looks to the legislative history of the statute. *Wash. Gas Light Co. v. Md. Pub. Serv. Comm'n*, 460 Md. 667, 682 (2018) (citing *Shealer v. Straka*, 459 Md. 68, 84 (2018)). This Court's inquiry is not limited to the particular statutory provisions at issue on appeal. Rather, "[t]his Court may also analyze the statute's 'relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.'" *Blackstone v. Sharma*, 461 Md. 87, 114 (2018) (quoting *Kaczorowski v. Mayor & City Council of Balt.*, 309 Md. 505, 515 (1987)). The legislative history here confirms the plain meaning reading described above.

Three notable substantive changes occurred after the 1975 recodification of the CPA. In 1984, the legislature removed the blanket exemption for "activities regulated by the public service commission" and added qualifying language. 1984 Md. Laws, ch. 563 (exempting "a public service company, to the extent that the company's services and operations are regulated by the public service commission"). More recently, the legislature added to the list of exempted professions additional categories of licensed professionals and amended the language of existing professions. 1988 Md. Laws, chs. 209, 563 (adding "chiropractor," "real estate broker," and "real estate salesperson" to the list of exempted professionals); 2001 Md. Laws, ch. 731, § 1 (updating nomenclature of insurance professionals).

This history of the CPA provides two important takeaways. First, the General Assembly has consistently broadened the professional exemption by adding professions to the exempt list. Second, the General Assembly took the opportunity to remove the blanket

exemption for activities regulated by the public service commission but avoided amending other provisions of the professional services exemption. It would have been sensible, had the General Assembly intended to do so, to qualify the language of the professional services exemption at the same time that they qualified the language of the public service commission exemption. It is true that legislative inaction is a weak indicator of legislative intent. *E.g. State v. Bell*, 351 Md. 709, 721 (1998). This Court, however, may not supply missing language when there is an omission in the legislative scheme by judicially creating a statutory provision as the Majority has accomplished by blending the different statutes. *Fisher v. State*, 367 Md. 218, 292 (2001) (Bloom, J., concurring in part and dissenting in part).

The Majority weaves into the CPA the directives of the MCDCA and the MCALA. According to the Majority, because a violation of the MCALA is a violation of the MCDCA and the CPA, the various attorney exemptions provided by each act should be in accord with one another. Specifically, the MCALA contains a qualified attorney exemption and the MCDCA contain no attorney exemption at all. Against this backdrop, the Majority asserts that a "broad interpretation of the professional services exemption" is "at odds with the exemption under MCALA." Slip Op. at 27. The Majority therefore concludes that the "per se" CPA violation created by MCALA or MCDCA trumps the CPA statute itself. However, there is no statutory language indicating that such a "per se" violation would void the clearly-stated attorney exemption in the CPA. Absent express language by the General Assembly that negates the attorney exemption, I would hold that the attorney exemption prevails.

6

Overall, the Majority's new exception to the attorney exemption is created by an overreliance on *Scull* while ignoring the distinct differences between medical and legal professions. Although the Majority attempts to limit this exception based upon the facts of this case, the holding still undercuts the policy of the General Assembly to provide a professional service exemption to attorneys within the CPA. The net effect is that attorneys, in advising clients on debtor-creditor law, could find their attorney-client privileged advice and counsel subject to a private cause of action, damages, and liability for attorneys' fees of opposing parties. *See* CL § 13-408. I do not believe that the statutory language between these statutes justifies this outcome nor that this voiding of the attorney exception was the intent of the General Assembly.

Circuit Court for Frederick County
Case No. 10-C-16-000961
Argued: September 9, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 5

September Term, 2019

—————————————————

ANDREWS & LAWRENCE PROFESSIONAL
SERVICES, LLC AND GALYN MANOR
HOMEOWNERS ASSOCIATION, INC.

v.

DAVID O. MILLS, et ux.

—————————————————

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D.,
   (Senior Judge, Specially Assigned)

JJ.

—————————————————

Concurring and Dissenting Opinion by Adkins,
J.

—————————————————

Filed: January 28, 2020

Most respectfully, I dissent and concur. I differ from both of my colleagues in this important case but cherry-pick from the best of each of their excellent opinions.  I agree with Judge Getty that, using a plain meaning analysis of the "professional services" exemption of the CPA, when attorneys undertake to perform collection services for a client, like other professional legal services, the CPA "does not apply."  CL § 13-104(1). Unlike *Scull*, this case does not involve professionals collecting their own fees from their clients, which we held to be "entrepreneurial aspects of a medical practice."  I also agree with Judge Getty's explanation that neither the MCDCA nor the MCALA can properly be relied upon to undermine the clear language of § 13-104.

Judge Booth says that a client who hires an attorney to be his agent can, under certain circumstances, be liable for the attorney's actions that constitute violations of the CPA, applying agency principles recognized in Maryland cases. Her logic on that point is persuasive.  But I urge that trial judges act with caution in determining the scope of authority and instructing juries about the same.  Clients should be liable for acts of their attorneys that violate the CPA only when they show some awareness of the actions the attorney will take or mechanisms the attorney uses that constitute those violations.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/5a19cn.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/5a19cn2.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/5a19cn3.pdf